254 N.J. Super. 122 (1992)
603 A.2d 102
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DARRYL DOSS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 1992.
Decided February 19, 1992.
*124 Before Judges DREIER, GRUCCIO and BROCHIN.
Wilfredo Caraballo, Public Defender, attorney for appellant (Virginia C. Saunders, Assistant Deputy Public Defender, of counsel and on the brief).
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent (Lisa Sarnoff Gochman, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
Defendant Darryl Doss was indicted for third degree possession of cocaine contrary to N.J.S.A. 2C:35-10. Claiming that he had been illegally searched and arrested, he moved before trial to prevent the State from introducing into evidence cocaine which he asserted was the product of the unlawful search. His motion was denied and he pleaded guilty in accordance with a *125 plea agreement. Consistently with that agreement, he was sentenced to one year of probation conditioned on ninety-two days in the county jail. A $1000 D.E.D.R. penalty, a $50 laboratory fee, and a $30 V.C.C.B. penalty were also imposed, and his driver's license was revoked for six months.
Defendant appeals from the denial of his motion to suppress evidence and also from the court's refusal to consider his application for admission to the pretrial intervention program.

1
In the Amity Heights Housing Projects in South Bridgeton, New Jersey, there is a portion of a parking area, known as the "wall," where groups of people congregate at all hours of the day and night. Drug trafficking is known to be prevalent there.
At about 11:30 p.m. on November 29, Detective Robert Parks, a narcotics investigator for the Bridgeton Police Department, and several other police officers, all in an unmarked police car and in civilian clothes, drove into the parking area near the "wall." Although the weather was cold, a group of twenty or more persons had gathered there. The vehicle was recognized as a police car and some of the persons in the crowd yelled a warning that the police were coming. Four or five persons broke away from the crowd and ran.
One of the persons who ran away was later identified as the defendant. Detective Parks and another policeman followed defendant in their police car until he ran into an alley. When defendant entered the alley, Detective Parks and the other policeman got out of the car and ran after him on foot. The detective yelled, "Police, stop!" two or three times, but the defendant continued his flight. As the defendant ran into a lighted area, Detective Parks recognized him as someone whom he had seen in the project on previous occasions conversing with convicted drug dealers.
Defendant tripped and fell as he ran. Detective Parks and the other police officer caught up with him, grabbed him on the *126 ground, handcuffed him, and advised him that he was under arrest. One of the policemen grabbed a baseball cap balled up in the defendant's hand, opened it and saw that it contained a substance which looked like cocaine. The material, which was seized and later positively identified as cocaine, is the subject of defendant's motion to suppress evidence.
Detective Parks testified that he chased defendant because he ran away when the police arrived. Because of the nature of the area, the detective suspected that defendant ran away either because there was a warrant outstanding for his arrest or because he was committing a drug offense.
Detective Parks also testified that before he seized the cocaine in defendant's hat, he had arrested the defendant for disorderly conduct in violation of N.J.S.A. 2C:33-2. That statute states:
(a) Improper Behavior. A person is guilty of a petty disorderly persons offense if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he....
2. Creates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor.
The State's theory was that by running from a policeman who had lawfully ordered him to stop, the defendant compelled the police to chase him into the project causing a public hazard.
On appeal, the defendant argues that "the totality of the circumstances" did not justify the police in chasing, stopping, frisking, or arresting him; that his arrest ostensibly for violation of N.J.S.A. 2C:33-2 was a pretext; and that the cocaine seized from him when he was arrested should therefore have been suppressed. The defendant also argues that he was wrongfully excluded from the pretrial intervention program because he had moved to suppress evidence.

2
To be legally entitled to arrest defendant without a warrant, the police had to have probable cause to believe that he was committing a crime in their presence or had committed a crime elsewhere which was punishable by more than one year *127 in state prison.[1]State v. Macuk, 57 N.J. 1, 8, 268 A.2d 1 (1970); State v. Doyle, 42 N.J. 334, 349, 200 A.2d 606 (1964). The State and the defendant both agree that when the police began to chase defendant, they did not have probable cause to believe that he was or had been engaged in criminal activity. We concur. Cf. State v. Sims, 75 N.J. 337, 351-356, 382 A.2d 638 (1978).
However, for more than 20 people to have gathered in a parking lot at 11:30 p.m. on a cold, dark November night in an area where drug trafficking was known to be prevalent was suspicious. When someone in the crowd shouted an alarm as soon as he recognized that the vehicle which had arrived was a police car, causing three or four persons, including the defendant, to separate themselves from the crowd and run, the circumstances were sufficient to cause an experienced policeman to think that the persons who were fleeing had been engaged in criminal conduct which they were trying to hide from the police. When Detective Parks recognized defendant as someone whom he had seen conversing with convicted drug dealers on a number of occasions, the officer's suspicions would necessarily have been heightened.
Under the circumstances, although the police did not have probable cause to arrest and search defendant, they would have been remiss if they had not attempted to stop and interrogate him. They were legally entitled to order defendant to halt[2], and they were entitled to use non-lethal force to compel *128 compliance with their command. See Kolender v. Lawson, 461 U.S. 352, 366, 103 S.Ct. 1855, 1863, 75 L.Ed.2d 903, 915 (1983) (Brennan, J. concurring) ("[U]nder the Fourth Amendment, police officers with reasonable suspicion that an individual has committed or is about to commit a crime may detain that individual, using some force if necessary, for the purpose of asking investigative questions."); Edwards v. United States, 364 A.2d 1209 (D.C.App. 1976), reh'g en banc, 379 A.2d 976 (D.C.App. 1977) (When a suspect sought to evade a valid Terry stop by fleeing into private premises, the police are not required simply to "shrug [their] shoulders and allow a crime to occur or a criminal to escape."); 3 Wayne R. LaFave, Search and Seizure § 9.2(d), 368-69 (2d ed. 1987).[3]
The New Jersey Supreme Court summarized the applicable rule as follows in State v. Davis, 104 N.J. 490, 503, 517 A.2d 859 (1986):
New Jersey has long recognized that a temporary street-detention based on less than probable cause may be constitutional. In a pre-Terry decision, we *129 recognized that a police officer's duties include vital preventive roles and that reason and common sense dictate "he should clearly have the right to stop persons on the street for summary inquiry where, as here, the circumstances are so highly suspicious as to call for such an inquiry." State v. Dilley, [49 N.J. 460, 464, 231 A.2d 353 (1967)]. In determining the reasonableness of the detention, we concluded that all factors must be balanced, including the basis of suspicion on the part of the police officer and the nature and extent of the restraint on the individual.
See also State v. Sheffield, 62 N.J. 441, 303 A.2d 68, cert. denied, 414 U.S. 876, 94 S.Ct. 83, 38 L.Ed.2d 121 (1973); State v. Pierson, 223 N.J. Super. 62, 537 A.2d 1340 (App.Div. 1988); State v. Alexander, 191 N.J. Super. 573, 468 A.2d 713 (App.Div. 1983), certif. denied, 96 N.J. 267, 475 A.2d 570 (1984). Compare State v. Kuhn, 213 N.J. Super. 275, 517 A.2d 162 (App. Div. 1986) (Two men talking to a third man seated in a car parked diagonally across more than one parking spot outside a bar in an area of high illegal drug activity in the mid-afternoon did not amount to a basis for an "articulable suspicion" justifying a stop, pat-down and interrogation.)
In the present case, once the totality of the circumstances observed by the police justifiably aroused an "articulable suspicion" which warranted their stopping and interrogating defendant, he was legally obligated to halt in response to their shouted orders to stop and, subject to his privilege against self-incrimination, he had a duty to answer their inquiries.[4] As the Court stated in State v. Lashinsky, 81 N.J. 1, 11, 404 A.2d 1121 (1979), "where an officer's instructions are obviously reasonable, *130 in furtherance of his duties, an individual toward whom such instructions are directed has a correlative duty to obey them." See also State v. Taylor, 121 N.J. Super. 395, 297 A.2d 216 (Cty.Dist.Ct. 1972). When defendant continued his flight from the pursuing police officers despite their shouted orders to halt, his refusal to obey their orders, together with all of the other circumstances of the case, gave the police reasonable cause to believe that he had committed or was then committing a criminal offense. See Kolender v. Lawson, supra, 461 U.S. at 366 n. 4, 103 S.Ct. at 1863 n. 4, 75 L.Ed.2d at 915 n. 4 (Brennan, J., concurring) ("[R]eactions [by individuals to a properly limited Terry encounter], such as flight, may often provide the necessary information, in addition to that the officers already possess, to constitute probable cause."); LaFave, supra, § 9.2(d) at 369 (quoting Model Code of Pre-Arraignment Procedure at 284-85 (1975)). Consequently, when Detective Parks and the other policeman caught up with defendant and handcuffed him when he tripped and fell, they had probable cause to effect his arrest. The concurrent seizure and search of the cap which he held crumpled up in his hand, revealing the cocaine which it contained, was lawful because it was incident to a lawful arrest. See State v. McNair, 60 N.J. 8, 285 A.2d 553 (1972).
An alternative ground is available on the basis of which defendant's arrest and coincident search may also be sustained. Lashinsky, supra, held that the refusal of the defendant in that case to obey a policeman's order to leave the scene of a highway accident was a criminal offense. The decision was based on the language of N.J.S.A. 2A:170-29(2)(b) which declared that "Any person who in any place, public or private, ... interferes with any person lawfully therein.... Is a disorderly person." That statute was repealed by N.J.S.A. 2C:98-2, effective September 1, 1979. The statute currently in effect which is said to have been derived from N.J.S.A. 2A:170-29 is N.J.S.A. 2C:33-2. The latter statute does not include its predecessor's condemnation of one who "interferes...." However, N.J.S.A. *131 2C:29-1 condemns "interference"; it states, "A person commits an offense if he purposely ... prevents or attempts to prevent a public servant from lawfully performing an official function by means of ... physical interference or obstacle...." (Emphasis added.) The implication of Lashinsky is that refusing to obey the order of a policeman constitutes "interference" within the meaning of N.J.S.A. 2C:29-1. See also State v. Manning, 146 N.J. Super. 589, 370 A.2d 499 (App.Div. 1977) (An automobile passenger's refusal to comply with a policeman's order to return to his car "interfere[d]" within the meaning of N.J.S.A. 2A:170-29; cf. Township of East Brunswick v. Malfitano, 108 N.J. Super. 244, 260 A.2d 862 (App.Div. 1970); State v. Taylor, 38 N.J. Super. 6, 118 A.2d 36 (App.Div. 1955)).
The second sentence of N.J.S.A. 2C:29-1 says, "This section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions." That sentence does not exclude defendant Doss from its purview. He had not been charged with a crime although he was suspected of one. He had not refused to submit to an arrest; he was seeking to evade a stop short of an arrest. See State v. Perlstein, 206 N.J. Super. 246, 502 A.2d 81 (App.Div. 1985), where this court held that a driver who refused to show her driving credentials to a policeman and who moved her car contrary to his directions was guilty of "attempt[ing] to prevent a public servant from lawfully performing an official function by means of... physical interference" in violation of N.J.S.A. 2C:29-1. See also State v. Wanczyk, 201 N.J. Super. 258, 493 A.2d 6 (App.Div. 1985) (Resisting a policeman's efforts to complete a pat-down violates N.J.S.A. 2C:29-1.) Since defendant's refusal to obey the policemen's order to halt was an "interference" condemned by N.J.S.A. 2C:29-1b, he was committing either a crime or a disorderly persons offense in the presence of the officers. In either event, they were entitled to arrest him and conduct a search incident to the arrest. See *132 State v. Hurtado, 219 N.J. Super. 12, 23, 529 A.2d 1000 (App. Div. 1987) (Skillman, J., dissenting), rev'd on dissent, 113 N.J. 1, 549 A.2d 428 (1988).

3
Defendant was arrested in November 1988. He applied for Pretrial Intervention on February 14, 1989 and was denied admission to the Program on February 23, 1989. He failed to appear at a pretrial conference on February 6, 1989 and again failed to appear at a second pretrial conference on March 12, 1989. Six months later he was arrested on a bench warrant. On November 8, 1989, after his motion to suppress was denied, he made a "motion regarding re-opening of his PTI file." Referring to an Appellate Division decision which he did not name, the Law Division judge denied the motion in the following terms:
THE COURT: The Appellate Division has had the opportunity to reflect in that area. You can't have both [PTI and a motion to suppress] ... I'm bound by the law. The Appellate Division tells us that one has an election when one proceeds to the suppression. Then if he is not successful picking the prosecutor's pocket, you can['t] go back later on and tell him I want to try PTI. I want to go that route. You made the option. We're bound by that. Your motion will be denied.
The Law Division judge was apparently referring to State v. Salomon, 229 N.J. Super. 472, 474-75, 551 A.2d 1045 (App.Div. 1989). In that case we held that resolution of a defendant's motion to suppress evidence could properly be stayed pending his completion of a Pretrial Intervention Program. If the program was successfully completed, no evidence at all would be presented against the defendant and a motion to suppress would be moot. If the defendant failed to complete the program successfully and prosecution was resumed, the motion to suppress could be pursued. That decision is inapplicable to the issue raised in the present case.
The prosecutor's decision whether or not to admit a defendant to the Pretrial Intervention Program is subject to reversal by the court only if the decision is a "patent and gross abuse of discretion." State v. Leonardis (Leonardis II), 73 *133 N.J. 360, 382, 375 A.2d 607 (1977). See also State v. Bender, 80 N.J. 84, 402 A.2d 217 (1979); State v. Maddocks, 80 N.J. 98, 402 A.2d 224 (1979) The prosecutor's exercise of his discretion may have been based on entirely sufficient reasons, both procedural and substantive, why defendant should not have been admitted to the Pretrial Intervention Program. However, we are satisfied that pursuing a motion to suppress evidence on constitutional grounds should not be a basis for barring a defendant from admission to PTI. Since that was the only basis for the court's decision, we remand the case to the Law Division for plenary reconsideration. Both the State and the defendant may present evidence to supplement the record. We do not retain jurisdiction.
The order of the Law Division denying defendant's motion to suppress evidence is affirmed. Its order denying his motion "to re-open his PTI file" is vacated and the case is remanded to the Law Division for further proceedings not inconsistent with this opinion.
NOTES
[1] A police officer may also make a warrantless arrest of someone who, in his presence, has committed a disorderly persons offense or any other minor offense which involves a breach of the peace. See State v. Hurtado, 219 N.J. Super. 12, 24-25, 529 A.2d 1000 (Skillman, J., dissenting), rev'd on dissent, 113 N.J. 1, 549 A.2d 428 (1988).
[2] We note that the United States Supreme Court has held that pursuit of a suspect by the police is neither a "search" nor a "seizure" within the meaning of the Fourth Amendment of the United States Constitution. California v. Hodari D., 499 U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). However under New Jersey law, it would not be appropriate for the police to engage in an intrusive chase after someone without at least an "articulable suspicion" that he was or had been engaged in the commission of a criminal offense.
[3] See 3 Wayne R. LaFave, Search and Seizure § 9.2(d), 368 (2d ed. 1987):

[I]t would seem, as provided in the ALI Code [Model Code of Pre-Arraignment Procedure § 110.2(3) (1975)], that an officer "may use such force, other than deadly force, as is reasonably necessary to stop any person or vehicle or to cause any person to remain in the officer's presence." As the draftsmen point out,
it would be frustrating and humiliating to the officer to grant him an authority to order persons to stop, and then ask him to stand by while his order is flouted. Nor is it anomalous that this section authorizes force to compel the persons to stop but relies thereafter on the person's cooperation.... Moreover, if force were not authorized to enforce an order to stop, in all probability it would be used anyway, because a person who flees upon an order to stop will usually be subject to lawful arrest and thus the force authorized to effect an arrest. The net effect of authorizing force is, therefore, to allow the officer to avoid making an arrest in cases where the circumstances would usually justify this more drastic alternative. [quoting Model Code of Pre-Arraignment Procedure, § 110.2(3) 284-85 (1975)]
[4] In State v. Fatinich, 179 N.J. Super. 1, 5, 430 A.2d 233 (App.Div.), certif. denied, 88 N.J. 497, 443 A.2d 711 (1981), we observed, citing People v. Howard, 50 N.Y.2d 583, 430 N.Y.S.2d 578, 408 N.E.2d 908 (Ct.App. 1980), cert. denied, 449 U.S. 1023, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980), "It has been held that while police may have the right to make an inquiry, in the absence of information that a crime has occurred a suspect's failure to stop or his flight would be an insufficient basis for seizure or detention...." However, we neither approved nor disapproved that proposition. The quoted sentence continues, "... but even in such case, evidence seized will not be suppressed if the suspect abandoned it." It was the latter proposition in which we were interested, that even when there was no legal justification to search or seize a suspect, an object which he abandoned would be admissible in evidence.