284 N.J. Super. 513 (1995)
665 A.2d 1124
STATE OF NEW JERSEY, IN THE INTEREST OF J.B., A JUVENILE.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1995.
Decided October 12, 1995.
*515 Before Judges KING, LANDAU and KLEINER.
Kathleen Covert-Mininno, Special Deputy Attorney General, Acting Camden County Assistant Prosecutor, argued the cause for plaintiff-appellant, State of New Jersey (Joseph F. Audino, Deputy Attorney General  In Charge, Acting Camden County Prosecutor, attorney; A. Victoria Pinette, Assistant Prosecutor, of counsel and on the letter-brief).
Jacqueline E. Turner, argued the cause for juvenile-respondent, J.B. (Susan L. Reisner, Public Defender, attorney; Ms. Turner, Assistant Deputy Public Defender, of counsel and on the letter-brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Pursuant to leave granted, the State appeals an order suppressing evidence which was seized without a warrant from J.B. by a police officer. Defendant is a juvenile who was arrested for juvenile delinquency, specifically acts which, if committed by an adult, would constitute: (1) unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5; (2) possession of a controlled dangerous substance, contrary to N.J.S.A. 2C:35-10a(1); and (3) possession of a controlled dangerous substance with intent to distribute, contrary to N.J.S.A. 2C:35-5b(2).
On October 13, 1994, Patrolmen McLeod and Davila, members of the Camden Police department bicycle patrol, were engaged in an organized police activity known as a "corner sweep." When a "corner sweep" is planned, both the day shift of bicycle patrolmen and the regular night shift of bicycle patrolmen join forces at night and visit street corners in high drug-trafficking zones in Camden. Individuals found congregating on street corners are approached and asked for identification. The names of those individuals who respond to the inquiry are then cross-referenced with names on the police outstanding warrant list. Those individuals not wanted on that warrant list are asked to disperse from *516 the corner. Special emphasis on dispersal is directed at those individuals not residing in the immediate area.
On that date, at about 11 p.m., McLeod and his partner were cycling to the corner of 24th and High Streets, a high drug-trafficking intersection. While en route, they received a dispatch from police headquarters that the police department had received an anonymous citizen telephone complaint about a large crowd reported to be selling drugs on the corner of 24th and High Street. As McLeod approached that intersection from a distance of one-half block, he observed five individuals congregated on the corner. He recognized one individual, later identified as the juvenile, J.B., as someone he had seen regularly in the neighborhood. As McLeod and Davila approached the congregated group, J.B. ran from the group. Davila began to converse with the remaining individuals and McLeod walked to the corner to see if he could find J.B. with the intent to question him. McLeod walked around the corner but J.B. was not in sight.
McLeod did see another individual seated on the steps of a nearby porch. He noticed that individual looking back in the direction of the porch. Utilizing a flashlight, McLeod made an observation of the porch and found J.B. in a crouched position on his knees. The following colloquy on direct examination best explains the ensuing activity:
Q. Okay. And when you saw him cradled over what did you do 
....
....
A.  when I saw him cradled I assumed he was just simply hiding. And when I told him to get up, as he got  went to grab him to get up the drugs and everything was just underneath of him, the drugs and the gun.
....
Q. Why did you lift him up?
A. I lift  I lift him up  actually I lift him up for my safety and his safety `cause I didn't want  I didn't want  I didn't know what he had underneath of him at the time. He's like this. I just want to be safe.
McLeod found a medicine bottle containing thirty-nine glassine envelopes of "crack cocaine" and an automatic handgun loaded with five live bullets under J.B. when he stood erect. McLeod *517 confiscated these items. J.B. was arrested and charged with delinquency.
The motion judge, relying on State v. Tucker, 136 N.J. 158, 642 A.2d 401 (1994), suppressed the evidence. We conclude that the facts presented here are distinguishable from the stipulated facts in Tucker, and reverse the suppression order.

I
In Tucker, a police officer, while on routine patrol, observed two men seated on a curb. One of the men fled as the police vehicle approached. The police officer radioed for police assistance and another patrol vehicle responded. Tucker was blockaded in a yard by the two police vehicles and was apprehended after he discarded a packet of cocaine. Id. at 161-62, 642 A.2d 401.
On Tucker's motion to suppress, the Law Division judge concluded "that the police had neither probable cause nor a reasonable, articulable suspicion to believe defendant had committed a crime." Ibid. Therefore, "neither an arrest nor an investigatory stop was justified." Ibid. The Law Division judge denied the suppression motion and concluded that Tucker had abandoned the contraband. Ibid.
We reversed the Law Division judge. State v. Tucker, 265 N.J. Super. 358, 627 A.2d 174 (App.Div. 1993). Although we agreed that the police had illegally seized defendant, we concluded that the contraband had not been abandoned but was a direct product of the illegal seizure. Id. at 360-61, 627 A.2d 174. That conclusion was affirmed by the Supreme Court. State v. Tucker, 136 N.J. 158, 642 A.2d 401 (1994).
After explaining why the limited stipulated facts were insufficient to validate defendant's arrest, the Supreme Court concluded:
Police are not to be mere spectators of events. They may pursue persons to further investigation. Not every police pursuit is a seizure. A pursuit will very often turn up incriminating evidence or other circumstances that give rise to an articulable suspicion that the pursued is engaged in criminal activity. The decisions *518 of Terry, supra, and its progeny fully recognize that police officers must respond, short of arrest, to suspicious situations. A brief stop for questioning is an effective tool of police officers for investigating and preventing crimes. Under the Terry doctrine, provided articulable suspicion exists, police officers are permitted to use an official "show of authority," to detain the person with physical force, and to search the person for weapons. 392 U.S. [1] at 19 n. 16, 88 S.Ct. [1868] at 1879 n. 16, 20 L.Ed.2d [889] at 905 n. 16. However, such manifestations of police authority, unsupported by articulable suspicion of criminal activity, may turn a police pursuit into an unlawful seizure. Because the flight of defendant alone, without other articulable suspicion of criminal activity, generated by the pursuit does not meet the Terry standards for an articulable suspicion the police seizure was not justified.
[State v. Tucker, supra, 136 N.J. at 173, 642 A.2d 401.]
Here, in comparison to Tucker, the police were not on a routine patrol. These police officers were engaged in an organized police activity designed to eliminate loitering at night on street corners in high drug-trafficking areas. Additionally, on this particular evening the police were responding to a citizen telephone complaint of alleged drug-trafficking at the corner of 24th and High Streets, the very next corner they intended to check as part of their planned activity that evening. Flight from the police may not alone be significant; in the absence of other compelling circumstances, it clearly would not permit an "inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation...." Id. at 169, 642 A.2d 401 (quoting State v. Sullivan, 43 N.J. 209, 238-39, 203 A.2d 177 (1964)). However, flight under the compelling circumstances before us was sufficient to justify further investigation and, if necessary, investigatory detention. See also Model Jury Charges (Criminal), Flight (November 18, 1991), as cited in Tucker, supra, 136 N.J. at 169, 642 A.2d 401. These facts, when viewed collectively, permit a sufficient inference of criminal activity to justify police inquiry.
The facts in the case before us are more analogous to the facts in State v. Doss, 254 N.J. Super. 122, 603 A.2d 102 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992), where we concluded that police had justifiably stopped and interrogated the defendant because of the totality of the circumstances described in the *519 record. The Supreme Court in Tucker, supra, 136 N.J. at 170, 642 A.2d 401, summarized Doss:
On a November evening at 11:30, in unmarked vehicles, police were patrolling a parking area where drug trafficking was known to be prevalent. Approximately twenty people had gathered, and someone alerted the group that the approaching car was a police vehicle. Three or four persons, along with the defendant, ran from the crowd. Police, in their car, followed the defendant until he entered an alley. They got out of the car and pursued the defendant on foot. A police detective repeatedly commanded the defendant to halt. When the defendant ran into a lighted area, the detective recognized him as someone he had previously observed on several occasions talking with convicted drug dealers. The detective testified that he suspected that the defendant had run because he had committed a crime or that a warrant had been issued for his arrest. Those circumstances supported the officer's articulable suspicion to stop and interrogate defendant.
[State v. Tucker, supra, 136 N.J. at 170, 642 A.2d 401 (citations omitted) (citing State v. Doss, 254 N.J. Super. 122, 603 A.2d 102 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992)).]
Here, as in Doss, the police were in a high narcotic-trafficking area. More important, McLeod and his partner were not on routine patrol but were specifically present to perform an assigned police function: to conduct "corner sweeps" and to investigate a citizen complaint respecting narcotics activity. We note that the Tucker opinion fails to reference the hour of the arrest and does not describe the geographic vicinity as a high drug-trafficking area, factors which also distinguish this case from Tucker.
As for the reported telephone call, it alone would not have given McLeod a basis to effect an arrest because the informant was anonymous and of unknown reliability. See State v. Davis, 104 N.J. 490, 517 A.2d 859 (1986) (emphasizing that a call by a known, reliable source may justify an investigation). Nonetheless, the phone call certainly provided McLeod with a reason to conduct an investigation. See State v. Ramos, 282 N.J. Super. 19, 659 A.2d 480 (App.Div. 1995). As in Davis, the facts taken as a whole justify McLeod's investigative inquiry of J.B. The phone call and J.B.'s flight, coupled with the designated purpose of the patrol, gave McLeod a reasonable suspicion that J.B. was involved in criminal activity. Furthermore, McLeod was justified in lifting J.B. to his feet. This conduct represents the legitimate manifestation *520 of police authority discussed in Tucker. Lifting J.B. to his feet revealed the evidence to McLeod's plain view. Evidence in plain view during a custodial investigation is clearly admissible. State v. Bruzzese, 94 N.J. 210, 237, 463 A.2d 320 (1983). The seized evidence, drugs and a handgun, was admissible. We conclude that the motion judge erred in suppressing the evidence.

II
On appeal, although the State urged in its brief that "[t]he trial court erred in finding that the stop of the juvenile was improper," (Point II, A), and that "[t]he handgun and the bottle containing the narcotics were discovered in plain view," (Point II, B), defendant has only argued in his brief that "[t]he trial judge properly granted the juvenile's motion to suppress the evidence as there was [no] justification to seize the juvenile."[1] There is no dispute that the evidence when seized was physically visible. At oral argument, defendant did argue that McLeod's action in lifting defendant from a crouched position on the porch where he was hiding violated Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As the motion judge did not address that issue, nor was it briefed by defendant in this appeal, we need not consider that issue. Suffice it to say, we disagree with defendant's contention. McLeod specifically indicated that he lifted defendant for safety reasons. Under the total circumstances presented, we do not find the officer's conduct to have offended Terry. Lifting a crouched individual, found hiding on a porch on his knees at night, in a high narcotics area, after his flight from the corner where drug-trafficking was suspected, is certainly justified as police action designed to protect the safety of the investigating officer. Had McLeod employed a less aggressive tact and merely directed J.B. to stand, the medicine bottle and handgun still would have been observed in plain view. See State v. Sugar, 84 N.J. 1, 23, 417 *521 A.2d 474 (1980). The evidence would have been seized in any event and should have been admitted.
The order suppressing evidence is reversed. We remand to the Family Part for trial.
NOTES
[1] We conclude that the Point as typed contains a typographical error omitting the word "no" preceding the word "justification."