670 A.2d 592

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CHRISTOPHER ARTHUR, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 20, 1995—Decided January 31, 1996.

148

Before Judges SHEBELL, WALLACE and NEWMAN.

*Susan L. Reisner,* Public Defender, attorney for appellant (*M. Virginia Barta,* Assistant Deputy Public Defender, of counsel and on the letter brief).

*Deborah T. Poritz,* Attorney General of New Jersey, attorney for respondent (*Deborah Bartolomey,* Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Defendant Christopher Arthur appeals from an order denying his motion to suppress. Following that denial, defendant entered a guilty plea to third degree possession of cocaine, *N.J.S.A.* 2C:35–10(a)(1), pursuant to a plea agreement which recommended a three-year probationary sentence. Defendant was later sentenced to three years of probation, five hours of community service per month during his probationary term, periodic urine monitoring and participation in an outpatient drug program. A $1,000 DEDR penalty, a $50 lab fee, a $50 VCCB penalty and a suspension of driving privileges for six months were also imposed.

The focus of the motion to suppress was whether or not the Plainfield police, while conducting an undercover surveillance of a high narcotic area during the middle of a June day, had an articulable suspicion to stop defendant when he left the area in his automobile and order him out of the automobile. We conclude that the police did not and reverse.

The relevant facts follow. On June 26, 1993, Detective Smallwood, an experienced narcotics officer with the Plainfield Police Department, was conducting an undercover surveillance of the 1100 block of West Third Street. The area was considered one of high narcotic activity. Equipped with binoculars and supported by a back-up team of four to six police officers including Detectives Michael Robert Hoose and Wayne Williams, Detective Smallwood observed a white Ford Tempo drive into the area and park at about 12:30 p.m. He observed, through binoculars from about 150 feet away, a male seated in the driver's seat; he did not recognize the man, whom he later identified as defendant. One or two minutes later, a female walked toward the car and got in on the passenger's side. Detective Smallwood had no prior contact

with the female and knew nothing about either occupant of the car. He observed them for about five minutes. They were engaged in conversation. The female, later identified as Deborah Walls, got out of the automobile, looked around in every direction in what was described by Detective Smallwood as a suspicious manner, with a brown paper bag in her hand, which she held close to her body under her right arm like a football player carrying the ball. The bag was a brown grocery bag with the top rolled down, and was 10 inches wide by 5 to 6 inches high. The female was wearing a T-shirt and cut-off jean shorts. Because of her limited clothing, the detective concluded that she did not have the bag with her when she entered the car. He had seen on numerous occasions people transferring and passing narcotics in paper bags. As he put it, "The way she was looking, and she acted real suspicious, I just wanted her stopped." Detective Hoose and Williams were radioed and told to stop her.

Detective Smallwood also broadcast that the white Ford left the area. A minute later, Hoose spotted the female, jumped out of his car, ran up to her and immediately grabbed the bag from her. He looked inside and found a couple of hundred used crack vials in the brown paper bag. This information was radioed to Smallwood. He noted that used vials were recycled in the drug trade and that defendant may have more narcotic paraphernalia or drugs in the car. He then ordered the other officers to stop defendant.

Detective Williams, along with his partner, Detective Hawkins, responded. Detective Williams saw the vehicle coming towards his patrol car, made a U-turn, activated his emergency lights and pulled defendant's car over. No traffic violation had occurred. Detective Hawkins and Williams simultaneously exited their patrol car with Hawkins approaching the passenger door while Williams went to the driver's side and ordered defendant out of the car.

As defendant stepped out of the car, he blurted out to the detectives that he had "bottles", a street term for glass vials of cocaine, in his back pants pocket. Three glass vials of cocaine

were retrieved by Detective Williams from defendant's right rear pants pocket. Defendant was then placed under arrest.

Defendant moved to suppress the vials of cocaine seized from him. The motion judge found that the police had a clear articulable suspicion, based on what had been observed by Detective Smallwood before either Walls or defendant were stopped, justifying stopping both Walls and defendant to conduct further investigation. He thus concluded that the police had an articulable suspicion to stop defendant regardless of whether the intervening seizure of the brown paper bag from Ms. Walls was improper. In other words, the police had a right to stop defendant and ask him to exit the vehicle even if they could not rely on the evidence seized from Walls. Defendant's post-stop statement, which was unsolicited, then provided probable cause for the police to search and arrest him.

On appeal, defendant argues that the motion judge erred by ruling that the police officers had a reasonable articulable suspicion that defendant was involved in criminal activity, and therefore had no right to stop his vehicle to make further inquiry by requesting that he exit the vehicle. The facts known to the police and relied on at the time of the stop, defendant asserts, did not give rise to a reasonable belief that criminal activity was under way.

■ An investigatory stop is permissible where the officers have a particularized and objective basis for suspecting the particular person stopped of criminal activity. *Terry v. Ohio*, 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968). In determining whether such a basis exists, we must consider the totality of the circumstances known to the surveilling police. *United States v. Cortez*, 449 *U.S.* 411, 101 *S.Ct.* 690, 66 *L.Ed.*2d 621 (1981); *State v. Thomas*, 110 *N.J.* 673, 542 *A.*2d 912 (1988).

■ We first consider whether the motion judge correctly held that the police had a right to stop defendant without considering the evidence seized from Walls. We are persuaded that the

totality of the circumstances (not including the evidence seized from Walls) did not rise to the level of reasonable suspicion but rather Detective Smallwood acted upon a hunch, which does not measure up to the required standard. *Sibron v. New York,* 392 *U.S.* 40, 64, 88 *S.Ct.* 1889, 1903, 20 *L.Ed.*2d 917 (1968); *State v. Demeter,* 124 *N.J.* 374, 383, 590 *A.*2d 1179 (1991). The high crime area was the subject of a surveillance on a sunny June day just after noon. The defendant drove and parked by the curb. A female later entered his car. No transaction was observed. No exchange of money took place. No furtive gestures were observed. Two people were seen conversing in a parked car at noon. Neither defendant nor Walls was known to Detective Smallwood. No prior surveillance had been conducted of defendant. Nothing was known about these individuals other than the fact that their conversation was taking place in a high crime area known for drug trafficking.

The facts here are significantly different from those in *State v. Valentine,* 134 *N.J.* 536, 539, 636 *A.*2d 505 (1994), where observations were made in a high crime area at midnight and the officer knew the suspects had a prior criminal history or were routinely associated with drug dealers. *See also, State v. Doss,* 254 *N.J.Super.* 122, 125, 603 *A.*2d 102 (App.Div.), *certif. denied,* 130 *N.J.* 17, 611 *A.*2d 655 (1992).

To be sure, the female did look around in all directions when she exited the car with a brown paper bag that she did not have when she entered the car. That, however, is all Detective Smallwood knew about her when he ordered that she be stopped. While a brown grocery bag may be used to transport drugs, they are used to carry innocent items. *See, State v. Demeter, supra,* 124 *N.J.* at 382, 590 *A.*2d 1179. A rendezvous between a male and a female in a parked car in the middle of a summer day, albeit in a high crime area, does not suggest criminal activity. Purely innocent connotations may be ascribed to the observed conduct. Therefore, we disagree with the motion judge's finding that the

police had an articulable suspicion to stop defendant independently of the evidence seized from Walls.

We now consider whether the stop of defendant was justified based on consideration by the police of the evidence seized from Walls. As noted, the police did not have an articulable suspicion to stop Walls and therefore the seizure of evidence from her was improper. This is for the same reasons already discussed that the police did not have a right to stop defendant without considering the evidence seized from Walls since the knowledge of the police to be evaluated in each analysis is exactly the same. The issue then becomes whether the police could properly use the evidence illegally seized from Walls to justify its stop and search of defendant. The issue must be analyzed in the following two parts: (1) whether defendant has standing to object to the prior illegal search of Walls; and (2) if defendant does have standing, whether there was a sufficient nexus between the prior illegality and the seizure of cocaine from defendant such that the cocaine must be suppressed as the "fruit of the poisonous tree". *See* Wayne R. LaFave, 2 *Search and Seizure* Sec. 3.2(d) p. 58 (3d ed. 1996). Because the motion judge concluded that the police had an articulable suspicion to stop defendant aside from the evidence seized from Walls, he did not address the standing and "fruit" issues. Since we disagree with the motion judge's conclusion regarding articulable suspicion by the police in the absence of knowing the paper bag's contents, we must address these issues. If the police's consideration of the contents of the bag seized from Walls was proper, then the existence of an articulable suspicion would be clear and the stop of defendant would be constitutional.

*State v. Alston,* 88 *N.J.* 211, 228, 440 *A.2d* 1311 (1981), ruled that an accused has automatic standing to contest the validity of a search and seizure when possession of the seized evidence at the time of the contested search is an essential element of guilt. Our Supreme Court, "rather than follow the ... 'legitimate expectations of privacy in the area searched' standard

as applied in *Rakas, Salvucci* and *Rawlings* ",[1] retained "the rule
of standing traditionally applied in New Jersey, namely, that a
criminal defendant is entitled to bring a motion to suppress
evidence obtained in an unlawful search and seizure if he has a
proprietary, possessory or participatory interest in either the
place searched or the property seized." *Id.* This rule of standing
does not automatically provide a person with standing to object to
prior state action that was directed against another person. This
is true when that action becomes the basis for a subsequent search
and seizure that is in fact directed against the defendant, eventu-
ating in the subsequent seizure of incriminating evidence. *See,
State v. Johnson,* 43 *N.J.* 572, 595, 206 *A.*2d 737 (1965), *aff'd,* 384
*U.S.* 719, 86 *S.Ct.* 1772, 16 *L.Ed.*2d 882 (1966). In assessing
defendant's standing here, we therefore must ascertain the suffi-
ciency of his connection or relationship to the evidence seized.

A participatory interest in seized evidence extends beyond the
kind of relationship that could otherwise be considered only pro-
prietary or possessory. In commenting on the scope of a partici-
patory interest, the Court in *State v. Mollica,* 114 *N.J.* 329, 339,
554 *A.*2d 1315 (1989), said: "It rather stresses the relationship of
the evidence to the underlying criminal activity and defendant's
own criminal role in the generation and use of such evidence."
The "participatory interest" test, unlike the terms "possessory" or
"proprietary" which denote property concepts, "connotes some
involvement in the underlying criminal conduct in which the seized
evidence is used by the participants to carry out the unlawful
activity." *Id.* at 339–340, 554 *A.*2d 1315. *See also, State v. Curry,*
109 *N.J.* 1, 8–10, 532 *A.*2d 721 (1987).

█ In this case, the participation is unmistakable. Defendant
is the one who presumably gave the paper bag to Walls before she
exited the vehicle and was stopped by the police. Defendant's

---

[1] *Rakas v. Illinois,* 439 *U.S.* 128, 99 *S.Ct.* 421, 58 *L.Ed.*2d 387 (1978); *United States v. Salvucci,* 448 *U.S.* 83, 100 *S.Ct.* 2547, 65 *L.Ed.*2d 619 (1980); *Rawlings v. Kentucky,* 448 *U.S.* 98, 100 *S.Ct.* 2556, 65 *L.Ed.*2d 633 (1980).

connection to the paper bag and its contents is one of direct involvement. Therefore, his standing to challenge the evidence seized from Walls is unquestionable.

██ We must next ascertain whether there is a sufficient nexus between the prior illegal seizure from Walls and the instant stop and search of defendant. In other words, we have to determine whether the cocaine seized from defendant is illegal "fruit of the poisonous tree". *See Wong Sun v. U.S.*, 371 *U.S.* 471, 484, 83 *S.Ct.* 407, 416, 9 *L.Ed.*2d 441, 454 (1963). If there was a sufficient nexus between the prior illegal search and the search and subsequent arrest of the defendant, the evidence must be suppressed. However, if the evidence was obtained from defendant by means sufficiently independent to dissipate the taint of the illegal conduct, it would not be suppressed. *See, State v. Johnson*, 118 *N.J.* 639, 653, 573 *A.*2d 909 (1990) (quoting *Brown v. Illinois*, 422 *U.S.* 590, 603, 95 *S.Ct.* 2254, 2261, 45 *L.Ed.*2d 416, 427 (1975).

██ In making that determination, the test followed by our courts is based on three factors: (1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the policeman's conduct. *Ibid.*

██ We are satisfied that the taint of the illegal conduct in searching Walls was not dissipated by the time of the subsequent arrest of defendant. The temporal proximity between the illegal conduct and the challenged evidence was immediate. After the detective learned that Walls was carrying used crack vials, he radioed to have defendant stopped.

When defendant was stopped, but before he was searched, he blurted out that he had bottles in his back pocket. That statement gave the police probable cause to believe the defendant was carrying drugs. Although this spontaneous statement intervened between the search of Walls and defendant, it was not sufficiently independent of the illegal search of Walls to validate the search of defendant. The only reason the police stopped defendant was

because they found used crack vials in a bag carried by Walls. As a direct result of that stop, defendant blurted out that he had bottles. The circumstances are not so much intervening as they are part of the inter-related events between the search of Walls and the stop of defendant.

As to the third element, the action of the police in searching Walls was flagrant, to the extent that no facts could be pointed to which even sustain an articulable suspicion that she was carrying drugs. This taint carried over and permeated the stopping of defendant's vehicle. We are satisfied that a sufficient nexus existed between the prior illegal search and seizure of Walls and the stop and search of defendant to taint the evidence seized from defendant. Therefore, because the illegal seizure from Walls could not be used by the state in formulating an articulable suspicion in order to stop defendant and, as previously stated, without that information, the police lacked an articulable suspicion to stop defendant, the evidence seized from defendant must be suppressed.

Reversed and remanded.