NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5722-12T2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

RAMIER A. DUNBAR,

    Defendant-Respondent.

APPROVED FOR PUBLICATION

February 26, 2014

APPELLATE DIVISION

Argued telephonically December 5, 2013 —
Decided February 26, 2014

Before Judges Reisner, Alvarez and Carroll.[1]

On appeal from the Superior Court of New
Jersey, Law Division, Hudson County,
Indictment No. 13-01-0079.

Seth P. Galkin, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued
the cause for appellant (Gaetano T. Gregory,
Acting Hudson County Prosecutor, attorney;
Mr. Galkin, on the brief).

Elizabeth C. Jarit, Assistant Deputy Public
Defender, argued the cause for respondent
(Joseph E. Krakora, Public Defender,
attorney; Ms. Jarit, of counsel and on the
brief).

The opinion of the court was delivered by

ALVAREZ, J.A.D.

---

[1] Judge Carroll did not participate in oral argument. He joins
the opinion with counsel's consent.  R. 2:13-2(b).

During the early morning hours of August 19, 2012, two Jersey City uniformed officers were dispatched in a marked patrol car in response to a report of "shots fired." They arrived within seconds of the transmission, basically turning a corner. They encountered a group of approximately thirty persons who were "yelling" and "screaming," and immediately dispersed upon the officers' arrival. As the officers scanned the sidewalk, they noticed one individual, later identified as defendant, Ramier Dunbar, who appeared nervous. He disappeared into an adjoining alley while turning his head to watch the marked patrol car. Moments later, defendant came back out of the alley and began to walk away from the intersection. The patrol car followed him, and Officer Jose Perez asked defendant if he had heard shots in the area. Defendant appeared even more nervous, did not respond but continued moving away from the patrol car, looking back over his shoulder.

Perez exited his vehicle and asked defendant to stop. At that point, defendant began running, Perez behind him. Defendant reached into his waistband and threw a handgun onto the ground. Perez stopped to retrieve the weapon and continued after defendant, who was soon apprehended. The ensuing search revealed a bag of marijuana.

Defendant was indicted for second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count one); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two); fourth-degree possession of a prohibited device — a hollow-point bullet, N.J.S.A. 2C:39-3(f) (count three); third-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count four); and fourth-degree obstruction of the administration of law, N.J.S.A. 2C:29-1 (count five).

Based on the facts we have recounted above, drawn from Perez's testimony at the suppression hearing, the trial judge granted defendant's motion and suppressed all evidence seized as a result of his arrest. The State appeals, and we now reverse.

In reaching his decision, the trial judge principally relied upon State v. Williams, 410 N.J. Super. 549 (App. Div. 2009), certif. denied, 201 N.J. 440 (2010). In that case, police were patrolling a housing complex, hoping to deter a possible retaliatory shooting. Id. at 552. Upon observing police officers in the area in front of an apartment building, the defendant commenced to pedal away on his bicycle, placing his right hand in his pants pocket, ignoring the officers' command that he stop. Id. at 553. The arresting officers gave chase and pulled the defendant off his bicycle. Ibid. As the

officers "grabbed" the defendant, he discarded contraband. Ibid.

Since there was "nothing intrinsically suspicious about a person riding a bicycle in a housing complex courtyard," or even the ensuing flight, we affirmed suppression of the evidence. Id. at 556, 564. Other than defendant's attempt to pedal away while placing his hand in his pocket, no circumstance explained the officers' attention nor established any reasonable or articulable suspicion for the investigatory stop. Id. at 556-57. The information about the potential of a retaliatory shooting was vague, and non-specific in terms of where and when the retaliation might occur; there was no evidence that the source was reliable or the information just rumor; and there was no reason to believe the defendant might be involved. Id. at 556-58.

The State contends on appeal that the trial court erred because, in this case, the stop of defendant was a proper field inquiry. The State further claims that the officers had sufficient reasonable suspicion to make an investigatory detention, the gun was abandoned property and therefore lawfully recovered, and the drugs properly seized incident to arrest.

We review the trial court's findings of fact on a motion to suppress deferentially, affirming whenever they are supported by

sufficient credible evidence in the record. State v. Elders, 192 N.J. 224, 243 (2007). We particularly defer to those findings that flow from the trial court's opportunity to see and hear the witnesses, an opportunity not enjoyed by a reviewing court. State v. Johnson, 42 N.J. 146, 161 (1964); see also State v. Diaz-Bridges, 208 N.J. 544, 565 (2012). No such deference is accorded to the court's conclusions of law; such issues are addressed de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

It is the State's burden to establish by a preponderance of the evidence that the challenged stop and seizure falls within an exception to the Fourth Amendment's warrant requirement. Elders, supra, 192 N.J. at 246. One such exception is the investigatory or Terry[2]-type stop, in which specific and articulable facts, along with rational inferences, give rise to a reasonable and articulable suspicion of criminal activity. State v. Pineiro, 181 N.J. 13, 20 (2004). The test is objective, the question being whether at the moment of seizure, the officer had at his command sufficient facts supporting a person of reasonable caution in the belief that seizure was appropriate. Id. at 21-22. The analysis must be fact-

---

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

sensitive, each case must be carefully reviewed, and an individual determination made. Id. at 22. The totality of the circumstances must satisfy the reasonable and articulable standard. Elders, supra, 192 N.J. at 247.

Unlike the facts in Williams, the circumstances of this case gave rise to a reasonable and articulable suspicion that defendant had committed a crime or was in the process of committing one. In the aggregate, they support the conclusion that the officers had a reasonable basis for suspicion that defendant was engaged in criminal activity. See State v. Stovall, 170 N.J. 346, 368 (2002). "Even if all of the factors were susceptible of purely innocent explanations, a group of innocent circumstances in the aggregate can support a finding of reasonable suspicion." Ibid. (internal quotation marks omitted).

The officers arrived within moments of the report of shots being fired, and were faced with a chaotic scene. This alone is an important difference from Williams, where nothing untoward had occurred and it was uncertain whether it would. Although the crowd began to disperse upon their arrival, only defendant appeared nervous, drawing attention to himself by continuously looking back towards the officers. Rather than simply leaving, as the others were doing, he briefly ducked into an alley. When

A-5722-12T2

he walked away, and saw that the officers were following him, his nervousness only increased. When Perez attempted to speak to him, defendant began to run. Thus defendant's conduct, all told, did much more to arouse reasonable suspicion than the bicycle-rider's mere departure from the scene in Williams.

Defendant's nervousness alone would not have been sufficient to justify the investigatory stop, as opposed to a field inquiry, that resulted when Perez instructed defendant to halt. See State v. De Lorenzo, 166 N.J. Super. 483, 488 (App. Div. 1979) (explaining that an investigatory stop, as opposed to a field inquiry, was not reasonable where the only factor was defendant's nervousness). On the other hand, nervousness and furtive movements may be considered in conjunction with other factors to establish reasonable and articulable suspicion. See, e.g., Elders, supra, 192 N.J. at 250 ("To be sure, nervousness and conflicting statements, along with indicia of wrongdoing, can be cumulative factors in a totality of circumstances analysis that leads to a finding of reasonable and articulable suspicion of ongoing criminality."); State v. Valentine, 134 N.J. 536, 553-54 (1994); State v. Todd, 355 N.J. Super. 132, 138 (App. Div. 2002) (finding reasonable and articulable suspicion where defendant was "the only person then walking on [the] street" near where a crime was committed and was "sweating and

appeared nervous"). This defendant walked in and out of an alley, keeping the officers in his line of vision. He continued walking away while looking over his shoulder at the marked police car. Defendant did not respond when Perez spoke to him. And the observations must be placed in the context of the report, made moments prior to the police arrival at the scene, of a shooting. Thus, in the aggregate, defendant's conduct supported a finding of reasonable suspicion. See State v. Nishina, 175 N.J. 502, 512-13 (2003).

Another significant difference between this case and Williams is that defendant discarded the contraband, not as he was being physically restrained, but as he ignored the police directive to stop and was attempting to flee the scene. Here, "defendant's headlong flight" resulted in the very type of potentially dangerous situation that the statutory scheme requiring citizens to comply with police orders was intended to prevent. See State v. Crawley, 187 N.J. 440, 451, cert. denied, 549 U.S. 1078, 127 S. Ct. 740, 166 L. Ed. 2d 563 (2006).

In similar fashion to the scenario in Crawley, these officers had reason to fear that the suspect might be armed. This street encounter occurred within moments of a dispatch that shots had been fired.

Therefore, the facts fit precisely into the language of _Terry_ which defines when an investigative stop is lawful. Such street detentions are warranted "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." _Terry_, _supra_, 392 _U.S._ at 30, 88 _S. Ct._ at 1884, 20 _L. Ed._ 2d at 911. Perez reasonably concluded, while investigating a reported shooting, that defendant's conduct meant "criminal activity may be afoot." _Ibid._ The totality of the circumstances combined to create reasonable and articulable suspicion justifying the investigatory stop of defendant, making seizure of the handgun, and defendant's eventual arrest, lawful.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION