**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2042-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEITH I. HUNT, a/k/a
KEITH HUNT,

    Defendant-Appellant.

_____

Submitted April 16, 2024 – Decided May 9, 2024

Before Judges Mayer and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 22-03-0293.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (John P. Flynn, Assistant Deputy Public Defender, of counsel and on the briefs).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Timothy P. Kerrigan, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Keith I. Hunt appeals from his conviction and sentence after pleading guilty to second-degree unlawful possession of a firearm without a permit, N.J.S.A. 2C:39-5(b)(1). He contends the gun seized by police should have been suppressed. After carefully reviewing the record in light of the applicable legal standards, we reject defendant's contentions and affirm.

I.

We briefly recount the procedural history and relevant facts. In March 2022, a Passaic County grand jury returned an indictment charging defendant with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); fourth-degree endangering of another person, N.J.S.A. 2C:24-7.1(a); and third-degree receiving stolen property, N.J.S.A. 2C:20-7(a).

Defendant filed a motion to suppress evidence seized during a warrantless search of defendant's apartment[1] and of his person. The State contended the search of defendant's person was lawful based on reasonable and articulable suspicion that defendant was engaged in criminal activity.

---

[1] The denial of the suppression motion as to the warrantless search of defendant's apartment is not challenged on appeal.

An evidentiary hearing was scheduled in November 2022. In lieu of testimony, the parties stipulated to the judge's consideration of written reports authored by two police officers, Officer Noel Irizarry and Officer Juan Capellan and the officers' body camera videos capturing the incident. After oral argument, the judge reserved her decision and subsequently rendered an oral opinion on December 5, 2022 denying the suppression motion.

Approximately a week later, defendant pled guilty to second-degree unlawful possession of a weapon. In February 2023, defendant was sentenced a degree lower, pursuant to his plea agreement, to three-and-a-half years with three-and-a-half years of parole ineligibility and the remaining counts were dismissed.

Defendant raises one issue for our consideration:

> THE SUPPRESSION MOTION SHOULD HAVE BEEN GRANTED BECAUSE [DEFENDANT'S] FLIGHT WAS NOT REASONABLE SUSPICION TO STOP AND FRISK HIM.

II.

In the early morning hours on January 1, 2022, Paterson police responded to the area of 188 21st Avenue after receiving shot spotter notification of shots fired. Officers responded to the location and began canvassing the area. Within minutes of arriving, officers heard three to four gunshots. They began running

3

in the direction where they believed the shots were fired. Officers discovered shell casings on the ground and on a white Jeep parked below an apartment window.[2] After receiving an emergent call to "clear the air," Officer Irizarry ran in the direction of other officers in the area. Officer Irizarry saw a male, later identified as defendant, and a female standing on the street. Upon seeing the officers, defendant immediately turned and ran from the officers.

The officers initially shouted at defendant, "why are you running?" As defendant fled, Officer Irizarry "observed [defendant] reaching into his right front pocket." Officer Irizarry noted in his police report that "[m]ultiple officers advised [defendant] to stop running but [defendant] did not obey the commands." Officer Irizarry, along with other officers, stopped defendant and placed him in handcuffs.

Another officer conducted a pat down search of defendant and located a black handgun in defendant's right front jean pocket. The officers arrested defendant.

The judge denied defendant's suppression motion, finding in pertinent part:

---

[2] Some officers entered the apartment building and searched the apartment.

[T]here is reasonable articulable suspicion for the investigative detention of [] defendant based upon the totality of the circumstances.

First, the [c]ourt finds that the police are lawfully in the area canvassing due to a report of gunshots fired/ShotSpotter at that location.

Within minutes of arrival, the officers hear three to four gunshots while on scene. The [c]ourt therefore finds that the police are dealing with an active threat to public safety.

Moreover, while canvassing the area, the police observed what they believed to be a live round and/or shell casing on top of a white Jeep Compass, as well as shell casings on the ground directly underneath a certain apartment located at 188 21st Ave.

During this ongoing investigation, there is an emergent radio transmission to clear the air. Officers the[n] immediately begin to run towards the apartment building where they just observed the shell casings and where they believe the shots came from.

Again, the [c]ourt notes that as the police are approaching the area where [] defendant is standing, it is still an emergent and ongoing shooting investigation that poses a danger to both officer safety and public safety.

The instant facts are completely divergent from a situation where a shooting occurred earlier that evening or even an hour prior to police arrival.

The [c]ourt emphasizes that the police just heard three to four gunshots minutes before their encounter with [] defendant.

A-2042-22

The [c]ourt further finds that the credible evidence . . . reveals that upon seeing the police approach the defendant not only moves but begins to run.

These actions are antithetical to the actions of the other male observed . . . and, more important, to the actions of the female who was literally standing right next to [] defendant as the police are rapidly approaching her.

As such, the [c]ourt is not persuaded by the defendant's argument that he was running in compliance with the officer's statement to, "watch out, bro," nor is the [c]ourt persuaded by [] defendant's argument that his flight is the sole basis for his investigative detention.

In addition to running away, "when no other person engaged in such conduct," the motion judge found that defendant continuously disobeyed the officers' commands to stop, and one officer observed defendant "reaching into his right front pocket." Based upon the totality of these circumstances, together with rational inferences from those facts, the motion judge concluded defendant's investigative detention was reasonable. We agree that the actions of the police in this swiftly unfolding scenario were reasonable and lawful.

We begin our analysis by acknowledging general principles governing motions to suppress physical evidence. When reviewing a motion to suppress evidence, we "must uphold the factual findings underlying the trial court's

A-2042-22

decision, so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Evans, 235 N.J. 125, 133 (2018) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We defer to the trial judge's factual findings, as the trial judge has a better opportunity for a "feel" of the case. Elders, 192 N.J. at 244. In contrast, because issues of law "do not implicate the fact-finding expertise of the trial courts, appellate courts construe the Constitution, statutes, and common law 'de novo—with fresh eyes—owing no deference to the interpretive conclusions' of trial courts, 'unless persuaded by their reasoning.'" State v. S.S., 229 N.J. 360, 380 (2017) (quoting State v. Morrison, 227 N.J. 295, 308 (2016)).

Generally, warrantless searches and seizures are per se unreasonable and prohibited under the United States and New Jersey Constitutions absent a recognized exception to the warrant requirement. State v. Smart, 253 N.J. 156, 164-65 (2023). This case involves the investigative stop exception, also known as a Terry[3] stop, "which is a procedure that involves a relatively brief detention by police during which a person's movement is restricted." State v. Goldsmith, 251 N.J. 384, 399 (2022) (citing State v. Rosario, 229 N.J. 263, 272 (2017)).

---

[3] Terry v. Ohio, 392 U.S. 1 (1968).

A-2042-22

"An investigative stop or detention does not offend the Federal or State Constitution, and no warrant is needed, 'if it is based on "specific and articulable facts which, taken together with rational inferences from those facts," give rise to a reasonable suspicion of criminal activity.'" Ibid. (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002) (quoting Terry, 392 U.S. at 21). Reasonable suspicion "is a less demanding standard than probable cause." Ibid. However, "[n]either 'inarticulate hunches' nor an arresting officer's subjective good faith" will satisfy this constitutional requirement. Ibid. (quoting State v. Arthur, 149 N.J. 1, 8 (1997)).

"[I]n determining the lawfulness of an investigatory stop, a reviewing court must 'evaluate the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.'" State v. Privott, 203 N.J. 16, 25-26 (2010) (quoting State v. Davis, 104 N.J. 490, 504 (1986)). Thus, a judge must consider the entire picture rather than each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019). "[T]he touchstone for evaluating whether police conduct has violated constitutional protections is reasonableness." State v. Bard, 445 N.J. Super. 145, 157 (App. Div. 2016) (internal quotation marks omitted).

On appeal, defendant argues the motion judge erred by relying on defendant's flight alone, without any additional suspicious circumstances, to support the stop and frisk of defendant. State v. Tucker, 136 N.J. 158, 173 (1994) ("[F]light of defendant alone, without other articulable suspicion of criminal activity, . . . does not meet the Terry standards . . . .")

Given the totality of the circumstances during the early morning hours on January 1, 2022, defendant's arguments are unavailing.

It is well-settled that flight alone does not justify a Terry stop. State v. Dangerfield, 171 N.J. 446, 457-58 (2002) (citing Tucker, 136 N.J. at 169). However, flight "in combination with other circumstances . . . may support reasonable and articulable suspicion" required to justify a stop. State v. Pineiro, 181 N.J. 13, 26 (2004) (citing State v. Citarella, 154 N.J. 272, 281 (1998)).

Here, the motion judge properly found that defendant's flight alone was not the sole basis for the investigatory stop. She described the "other compelling circumstances," which included police responding to and investigating an active shooter; hearing gunshots within minutes of arriving on scene; and locating live shell casings in the area. Additionally, within proximity to this dangerous scene, officers saw defendant run and refused to halt in response to the police commands.

A-2042-22

In rejecting defendant's argument that he ran to comply with the officer's statement "watch out, bro," the motion judge noted only defendant, unlike the others on the street, fled. Moreover, as defendant ran, an officer observed defendant reaching into his right front pocket. Another officer observed a "large bulge in defendant's clothing" prior to frisking defendant.

Defendant further contends that the motion judge erred in failing to identify the precise moment defendant was stopped and relying on erroneous facts occurring after defendant was stopped to support reasonable suspicion. We are not persuaded by these arguments.

As the motion judge correctly observed, defendant's actions and the officers' observations occurred rapidly and simultaneously. The facts in this scenario, together with defendant's failure to comply with the commands to halt in the context of this active shooter investigation, together with all reasonable inferences, and the fluidity of the situation, the officers had more than a hunch to support articulable suspicion of criminal activity. Here, while investigating an active threat to public safety, the officers saw defendant, who immediately ran from the police and refused to stop. Based on these circumstances, the motion judge found the officers were justified in temporarily detaining defendant. In addition, as he was fleeing, one of the officer's observed defendant

reach into his pocket. Thus, in the context of this highly charged scenario, the officers had a reasonable basis to stop the defendant, and once stopped, the officers were justified in conducting a frisk of defendant's person to secure to their safety.

The facts of this case are distinguishable from State v. Tucker, 136 N.J. at 172-73. First, unlike in Tucker, the police were not on routine patrol but rather were responding to an active shooter scene. The facts of this case are more analogous with State v. Dunbar, 434 N.J. Super. 522, 524 (App. Div. 2014), where the police responded to a report of "shots fired"; and with State in the Interest of J.B., 284 N.J. Super. 513 (App. Div. 1995), where the police responded to an anonymous citizen complaint involving the sale of drugs. In Tucker, unlike this case, nothing "untoward had occurred." Dunbar, 434 N.J. Super. at 527.

Moreover, the police in Tucker never commanded the defendant to stop. In this regard, the case aligns with the facts in State v. Doss, 254 N.J. Super. 122 (App. Div. 1992), where the police repeatedly commanded the fleeing defendant, who acted suspiciously, to stop but the defendant continued to flee. In Doss, a case similar to the facts here, we held the "defendant's refusal to obey [the officer's] orders together with all of the other circumstances . . . gave the

11

police reasonable cause to believe" criminal activity was afoot. Id. at 130. We stated the officers "would have been remiss if they had not attempted to stop and interrogate" the defendant give the circumstances. Id. at 127.

In sum, "[t]he reasonableness of police conduct [must be] assessed with regard to circumstances facing the officers, who must make split second decisions in a fluid situation." Bard, 445 N.J. Super. at 157. As the motion judge properly concluded, the officers were faced with a serious risk to their safety and the safety of the community and the circumstances here satisfied Terry, justifying a stop and frisk of defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12