286 N.J. Super. 155 (1995)
668 A.2d 460
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALBERTO RUIZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 1995.
Decided December 26, 1995.
*156 Before Judges DREIER, KESTIN and CUFF.
Susan L. Reisner, Public Defender, attorney for appellant (Paul M. Klein, Deputy Public Defender, of counsel and on the letter brief).
Deborah T. Poritz, Attorney General, attorney for respondent (Robert E. Bonpietro, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant was charged with two third degree crimes, possession of cocaine and aggravated assault on a police officer, and with fourth degree resisting arrest. After the trial court denied defendant's motion to suppress evidence, defendant, pursuant to a plea agreement, entered a retraxit plea of guilty to the possession and aggravated assault charges along with a pending disorderly persons charge for possessing marijuana. As agreed, the resisting arrest charge was dismissed along with two other disorderly persons charges. Defendant was sentenced to concurrent two-year *157 probationary terms. A $1,000 DEDR penalty was assessed along with a $50 lab fee, aggregate VCCB penalties of $150, and a fine of $1,250.
The only issue raised by defendant on appeal is:
WHERE POLICE HAD NO REASONABLE BASIS TO BELIEVE THAT DEFENDANT WAS ENGAGED IN CRIMINAL ACTIVITY, THE ATTEMPTED STOP AND SUBSEQUENT CHASE OF DEFENDANT VIOLATED HIS RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES. (U.S. CONST., AMEND. IV; N.J. CONST. (1947), ART. I, PAR. 7). ACCORDINGLY, THE DECISION OF THE TRIAL COURT DENYING DEFENDANT'S MOTION TO SUPPRESS MUST BE REVERSED.
The only person to testify at the suppression hearing was Sergeant Powers of the Aberdeen Police Department. At about 11:20 p.m. on November 23, 1993, he was participating in a surveillance operation, when he received a radio communication from other members of the surveillance team alerting him to a person on Shady Nook Road in a residential area "known to be frequented by persons looking to purchase or distribute controlled dangerous substances." Sergeant Powers was in plain clothes, driving an unmarked vehicle and accompanied by two or three other police officers. He drove his vehicle to the indicated location. As he turned the corner onto Shady Nook Road, he saw one person, later identified as defendant, walking near the center of the roadway in the same direction of travel as the vehicle. He drove the vehicle alongside the pedestrian and stopped. Its window had been rolled down. Powers and the pedestrian looked at each other. Powers recognized defendant, who he knew by name. Powers had "had prior contacts with him in the neighborhood.... [and had] participated in arrests involving [defendant] and just general street contacts with him." Powers also knew that defendant had been arrested nearby about ten to twelve days earlier in a situation involving a group of young men which "entailed possession of narcotics and I believe loitering with the intent to distribute narcotics."
When Powers and defendant made eye contact, defendant expressed a look of surprise, uttered an expletive and "immediately turned and began running in a northerly direction." Powers *158 "immediately put the car in park, got out and started to give chase ..., yell[ing] `stop, police', at least once, possibly twice." One of the other police officers in the car also got out and began to give chase. Defendant did not respond to Powers's shout. "He didn't slow down. I don't believe he looked back." Powers knew that defendant lived nearby, but believed the direction he was running was not towards defendant's house.
Powers kept defendant in sight during most of the chase. At one point defendant "started to run through a yard. He hopped over one fence. [The two police officers] got over that fence ... and then at the back of that yard [defendant] got over that fence. By this time he was a little ahead of me.... I could see that he appeared to toss away several items away from his body." The items were retrieved, and became the evidentiary basis of the possession of cocaine charge and the objects of the motion to suppress. Sergeant Powers testified further as to his purpose in pulling the vehicle alongside defendant before the chase began: "At that time I just wanted to see who it was, briefly ask him where he was coming from, where he was going to and see what information I could get."
On cross-examination, Sergeant Powers acknowledged that it was not particularly unusual to see a person walking in the roadway as defendant had been. Powers also acknowledged that although he had previously been involved in the execution of a search warrant and in a narcotics arrest on a street two blocks away, he couldn't recall any narcotics arrests on Shady Nook Road. He also testified that defendant was not carrying any packages, that defendant was alone as he walked down Shady Nook Road, and that Powers and his surveillance team had received no specific complaint about drug dealing on Shady Nook Road that night. Sergeant Powers also testified, on redirect examination that, when defendant was first sighted, he appeared to be coming from Raritan Street nearby, where Powers had been involved in several arrests and warrants at a house occupied by a *159 particular individual known by Powers to have a connection with defendant.
The focal issue at the suppression hearing and on appeal is whether this case is controlled by State v. Tucker, 136 N.J. 158, 642 A.2d 401 (1994), or by State v. Doss, 254 N.J. Super. 122, 603 A.2d 102 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992), cited with approval in Tucker, supra, 136 N.J. at 169-70, 642 A.2d 401. The question bears upon the factual ingredients of this case and whether, together, they take on a flavor that is closer to the facts of Tucker, in which the seizure of evidence discarded during a chase was suppressed, or Doss, in which the motion to suppress was denied. Resolution requires an understanding of the points that, together, comprise the fine line separating Tucker from Doss, much as in constructive possession cases involving motor vehicle stops in respect of State v. Palacio, 111 N.J. 543, 545 A.2d 764 (1988), and State v. Shipp, 216 N.J. Super. 662, 524 A.2d 864 (App.Div. 1987). See, e.g., State v. Miller, 273 N.J. Super. 192, 196, 641 A.2d 567 (App.Div. 1994). Such reasoning processes are often exercises suffused with fine distinctions and seldom requited by certainty. In Tucker:
Trenton police officers, riding in marked police vehicles, patrolled East Stuyvesant Avenue and the 300 block of Rutherford Avenue. The streets are presumably parallel to each other. As the first patrol car turned onto Stuyvesant Avenue, the officers observed two males sitting on the curb at the rear of a house that has its frontage on Rutherford Avenue. One of the males was drinking from a bottle wrapped in a brown paper bag. When the men observed the marked police vehicle, the man with the brown paper bag remained on the curb while the other, subsequently identified as defendant, quickly stood up, turned, and started running through the yard toward the front of the property on Rutherford Avenue. An officer in the first patrol car immediately radioed a description of the fleeing man to officers in the second patrol car, which was on East Rutherford Avenue. When defendant reached Rutherford Avenue, the second patrol car intercepted him. One of the officers in that car got out and began to pursue defendant. Defendant turned around and ran back toward the rear of the yard. As defendant ran past the back porch of the house, he threw a clear plastic bag into an opening under the porch. He then ran directly into one of the officers from the first patrol car, who stopped him. The officer who stopped defendant turned him over to the other officer and then retrieved the plastic bag from under the back porch. It contained crack cocaine.

*160 Defendant moved to suppress the evidence. The Law Division reasoned that the police had illegally arrested defendant by trapping him in the backyard. The trial court held that because the police had neither probable cause nor a reasonable, articulable suspicion to believe defendant had committed a crime, neither an arrest nor an investigatory stop was justified. However, that court denied the motion to suppress on the basis that defendant had abandoned the contraband by tossing it under the porch, thereby relinquishing any reasonable expectation of privacy.
On appeal, the Appellate Division reversed, 265 N.J. Super. 358, 627 A.2d 174. Although it agreed with the trial court that the police had illegally seized defendant, it held that the act of discarding the goods had been the direct product of the illegal seizure rather than an abandonment.
[136 N.J. at 161-62, 642 A.2d 401.]
The Supreme Court recognized that the United States Supreme Court in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), had held that the seizure of contraband discarded during a chase in similar circumstances was not invalid under the Fourth Amendment to the United States Constitution. Tucker, supra, 136 N.J. at 163-65, 642 A.2d 401. After resolving any doubt that, under the New Jersey Constitution, art. I, ¶ 7, the evidence was the product of a seizure of the person, the Court proceeded to the question: "Was this seizure justified?" Id. at 166, 642 A.2d 401.
The reasoning process began with a recognition "that[, under State law,] a temporary street detention based on less than probable cause may be constitutional[,]" id. at 167, 642 A.2d 401; State v. Sheffield, 62 N.J. 441, 446, 303 A.2d 68, cert. denied, 414 U.S. 876, 94 S.Ct. 83, 38 L.Ed.2d 121 (1973), and "that a police officer could order a passenger out of an automobile if the officer had an articulable suspicion short of probable cause to believe that a crime had been committed." Tucker, supra, 136 N.J. at 167, 642 A.2d 401; State v. Smith, 134 N.J. 599, 637 A.2d 158 (1994). The Court also cited State v. Valentine, 134 N.J. 536, 553-54, 636 A.2d 505 (1994), as
(holding frisk of defendant was reasonable based on officer's personal knowledge of defendant's prior criminal history involving weapons and drugs; fact that stop occurred after midnight in a high-crime area; officer's observation of defendant ducking behind tree and then emerging with hands in pockets; and defendant's nervousness and failure to make eye contact with officer.)
[Tucker, supra, 136 N.J. at 168, 642 A.2d 401.]
*161 The Court went on to observe that in "circumstances demonstrating particularized suspicion ..., such as a high-crime location or late-evening to early-morning hours, police would have greater latitude to subject a citizen to an investigatory stop." Ibid. In Tucker, however, "the sole basis asserted for police action was the youth's flight," id. at 168-69, 642 A.2d 401; and flight alone, without other suspicious circumstances, was insufficient as a basis for engaging in the type of seizure that, under State law, a chase is, id. at 169, 642 A.2d 401.
State v. Doss, supra, was cited as an example of a situation in which a police officer "had justifiably stopped and interrogated the defendant because of the circumstances described in the record." Tucker, supra, 136 N.J. at 170, 642 A.2d 401. There, the Supreme Court noted,
[Police] in unmarked vehicles, ... were patrolling a parking area where drug trafficking was known to be prevalent. Approximately twenty people had gathered, and someone alerted the group that the approaching car was a police vehicle. Three or four persons, along with the defendant, ran from the crowd. Police, in their car, followed the defendant until he entered an alley. They got out of the car and pursued the defendant on foot. A police detective repeatedly commanded the defendant to halt. When the defendant ran into a lighted area, the detective recognized him as someone whom he had previously observed on several occasion talking with convicted drug dealers. The detective testified that he suspected that the defendant had run because he had committed a crime or that a warrant had issued for his arrest. Those circumstances supported the officer's articulable suspicion to stop and interrogate defendant. (citations omitted).
[Ibid.]
Because, in Tucker, "`the only ostensible basis for [the police] to have pursued defendant was that defendant had inexplicably fled when he saw the police van[,]'" Ibid. (quoting State v. Tucker, 265 N.J. Super. 358, 360, 627 A.2d 174 (App.Div. 1993), the Supreme Court "[found no] basis to justify the police seizure of defendant." Tucker, supra, 136 N.J. at 170, 642 A.2d 401. The Court suggested that the absence of any other factors, such as the police officer's knowledge of an individual as having "a prior criminal history," ibid. (citing Valentine, supra, 134 N.J. at 540, 636 A.2d 505, which also involved a location identified as a high crime area and a defendant whose conduct was suspicious), required the *162 result. Finally, the Court went on to hold that the contraband discarded by defendant Tucker during an unreasonable seizure (the chase) could not be considered admissible as abandoned property. Tucker, 136 N.J. at 172, 642 A.2d 401.
In summing up the reasons for decision, the Supreme Court in Tucker noted:
The problem with this case is that we are forced to deal in abstract concepts of seizure divorced from the reality of the streets. Were all of the circumstances known, we rather suspect that it would appear that the police did not pursue Tucker just because he ran. However, we must decide the case on the record that is before us.
[Id. at 172-73, 642 A.2d 401.]
It concluded with the following observations and explanation:
Police are not to be mere spectators of events. They may pursue persons to further investigation. Not every police pursuit is a seizure. A pursuit will very often turn up incriminating evidence or other circumstances that give rise to an articulable suspicion that the pursued is engaged in criminal activity. The decisions of Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and its progeny fully recognize that police officers must respond, short of arrest, to suspicious situations. A brief stop for questioning is an effective tool of police officers for investigating and preventing crimes. Under the Terry doctrine, provided articulable suspicion exists, police officers are permitted to use an official "show of authority," to detain the person with physical force, and to search the person for weapons. 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905 n. 16. However, such manifestations of police authority, unsupported by articulable suspicion of criminal activity, may turn a police pursuit into an unlawful seizure. Because the flight of defendant alone, without other articulable suspicion of criminal activity, generated by the pursuit does not meet the Terry standards for an articulable suspicion, the police seizure was not justified. Defendant's abandonment of the evidence transpired after defendant no longer was free to leave and after the police had unlawfully seized him; therefore, the Appellate Division properly excluded the evidence.
[Id. at 173, 642 A.2d 401.]
We discern an underlying principle from the Supreme Court's analysis of the facts in Tucker as compared to those in Doss; the holdings it articulated; and the rationale expressed that the mere act of leaving a police presence, even by running away, cannot, alone, without any other factor, legitimately produce the articulable suspicion required to validate a Terry stop. It is that a person is privileged, upon noting a police presence, to decide that he or she wishes to have nothing to do with the police, without *163 risking apprehension solely by reason of the conduct manifesting that choice. State v. Kuhn, 213 N.J. Super. 275, 282, 517 A.2d 162 (App.Div. 1986). A departure alone signifies nothing more than behavior in fulfillment of a wish to be a somewhere else.
The question remains whether this defendant's conduct and the circumstances in which it occurred were such as to spare him from police action or inquiry. We see the record before us as establishing considerably more about defendant and the circumstances than we or the Supreme Court were given in Tucker. It was late at night, the location in which defendant was walking was known as a drug trafficking area, defendant was walking at or near the center of the roadway, and he was known to the police officer by name and as a person who had previously had a connection with drug transactions and those engaging in them. All these factors, taken together, are, under Tucker, an adequate basis to justify a Terry stop and, if the person flees, a pursuit. Since such a pursuit is not, by definition, a seizure, any items discarded along the way by the person pursued may be retrieved by the police and used as evidence of criminal conduct.
There is also some similarity between the foregoing circumstances and those in Doss: the time of night was almost identical, the area was only known for drug trafficking, and the person being chased failed to heed an instruction to stop. There are some differences as well. Here, defendant was alone; defendant in Doss was in part of a group. Here, the police officer knew defendant's identity before the chase began; in Doss, the defendant's identity was discovered during the chase.
The details of the factual circumstances depicted here are manifestly different from those shown in Tucker, where the only reason given for the chase was that the defendant ran upon seeing the police. The trial judge was clearly correct in viewing the circumstances of this case to be closer to Doss than to Tucker, and in ruling, on the basis of Tucker and Doss, that defendant's motion to suppress should be denied.
Affirmed.