719 A.2d 1272 (1998)
316 N.J. Super. 174
STATE of New Jersey, Plaintiff-Respondent,
v.
L.F., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 1998
Decided November 25, 1998
Ivelisse Torres, Public Defender, for defendant-appellant (Stephen A. Caruso, Assistant Deputy Public Defender, of counsel and on the brief).
John Kaye, Monmouth County Prosecutor, for plaintiff-respondent (John F. Hazard, Jr., Assistant Prosecutor, of counsel and on the brief).
Before Judges LONG, KESTIN and CARCHMAN.
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant was charged with several crimes in four indictments. The three counts of indictment no. 96-02-165 charged attempted aggravated sexual assault (second degree), aggravated criminal sexual contact (third degree), and terroristic threat (third degree). Indictment no. 96-02-0164 contained two charges: fourth degree stalking and terroristic threat (third degree). Indictment no. 96-02-163 charged failure to register as a convicted sex offender (fourth degree). Indictment no. 96-01-0033 charged third degree possession of cocaine.
The trial court denied defendant's motion to suppress evidence relative to the drug charge. Subsequently, pursuant to a plea agreement, defendant pled guilty to possessing cocaine; as well as to attempted aggravated sexual assault, one of the charges in indictment no. 96-02-165; and failure to register, as charged in indictment no. 96-02-163. The remaining charges were dismissed. Defendant was sentenced in accordance with the plea agreement to ten years of imprisonment with four years of parole ineligibility for the second degree crime, along with a concurrent eighteen-month term for the fourth degree crime. The base term of imprisonment was lengthened by a consecutive three-year term for the third degree drug crime.
Defendant appeals only from the denial of his motion to suppress. As to that ruling and the conviction based thereon, we reverse and remand.
At the hearing on the motion to suppress, Freehold Borough Police Officer Niesz testified that he was on duty with the Street Crimes Unit at 5:40 p.m. on September 7, 1995, patrolling on Marcy Street in an undercover vehicle while dressed in police attire. It was a high-crime area. He saw defendant *1273 outside the Day Activity Center, which housed a clinic and a training facility for mentally handicapped individuals. Defendant was "kind of remaining idle, not really walking around, just standing there." He was known to Niesz as a person with a criminal record.
Officer Niesz went on to testify:
As we were approaching closer to him that is when he proceeded to walk away toward the rear of the Day Activity Center into... a dirt path. As he was going down there that is when we immediately went down to follow him. Like I said before, since it's an area that is of such high crime, incidents have occurred there, we wanted to go and check him out and see what he was doing there.
* * * * * *
[W]e came to a stop, we got out. As we did, we saw him walking toward the woods. When he noticed that we had gotten out of our vehicle at that time, we were obviously police officers since we had the police jerseys on, he turned around and looked at us. He is missing a right-hand, so it was very obvious when he turned around and put something from his left-hand into his right pocket. That is when we immediately went up to him and confronted him, asked him what he had placed in his pocket. That is when he advised us or told us I didn't put anything in my pocket. And I just questioned him more about it. He said look, go ahead and search me, I don't have anything to hide.
Q What was your response?
A I said you don't have to let us search you. He said I don't have anything on me, go ahead and search me, so I did.
The search disclosed the drugs upon which the charge was based.
On cross-examination, Officer Niesz testified that he did not observe defendant engaging in any criminal activity or suspicious conduct. He also acknowledged that the dirt path onto which defendant walked was commonly used by residents of the area.
Defendant, in his testimony, denied that he gave the police officers permission to search him.
The trial judge saw the focal issue to be whether the search had been conducted with or without defendant's permission, and he resolved the question favorably to the prosecution. Were that all there was to the case, however doubtful it might be that a person carrying cocaine would freely invite the police to search him, we would be constrained to affirm because the finding was based on evidence of record, see State v. Johnson, 42 N.J. 146, 160-62, 199 A.2d 809 (1964), and involved a credibility determination, see Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607, 560 A.2d 655 (1989). See also State v. Watson, 261 N.J.Super. 169, 177, 618 A.2d 367 (App.Div.1992), certif. denied, 133 N.J. 441, 627 A.2d 1145 (1993); State v. Boone, 114 N.J.Super. 521, 525, 277 A.2d 414 (App.Div.), certif. denied sub nom. State v. Terry, 58 N.J. 595, 279 A.2d 680 (1971).
There was another essential aspect of the decision, however. The judge's evaluation was necessarily based upon his understanding of the principles governing the police officers' stop of defendant, and a misperception of how those principles applied to the facts of this case. He noted:
The Fourth Amendment protects an individual against unreasonable searches and seizures. To merely approach an individual in a public place, ask if he is willing to answer questions, asking those questions if he is so willing or offering as evidence the individual's voluntary answers to such questions is not a seizure of constitutional proportions, State v. Davis, 104 N.J. 490, 497 [517 A.2d 859] (1986). This is so slight an intrusion as to require no articulable basis. State v. Alexander, 191 N.J.Super. 573, 578 [468 A.2d 713] (App.Div.1983). A brief stop to determine an individual's identity and maintain the status quo while obtaining more information may be most reasonable in light of the facts known to the officer at the time. Adams v. Williams, 407 U.S. 143, 146 [92 S.Ct. 1921, 32 L.Ed.2d 612] (1972).
In State v. Tucker, 136 N.J. 158, 642 A.2d 401 (1994), the New Jersey Supreme Court clarified the scope of Davis when it eschewed reliance on the United States Supreme *1274 Court's reasoning in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), and "continue[d] to define a seizure under New Jersey constitutional law in accordance with our existing precedent, Davis..., and decide[d the] case on state constitutional grounds." Tucker, supra, 136 N.J. at 165, 642 A.2d 401. Both Tucker and Hodari D. involved the admissibility of contraband seized by the police after it was discarded during a chase. Here we are confronted with police conduct that went a step beyond, an actual search of defendant's person.
In deciding Tucker, our Supreme Court regarded the police officers' reasons for focusing on the defendant to be critical to the inquiry. Indeed, as the Supreme Court observed, Hodari D. itself involved "circumstances demonstrating particularized suspicion[.]" Id. at 168, 642 A.2d 401. We note that suspicious circumstances also existed in the other cases cited by the trial judge in this matter. In Tucker, however, circumstances demonstrating particularized suspicion did not exist:
[W]hat this record does not show is also highly persuasive: no observed criminal activity; no particularized suspicious conduct, such as the possession of suspicious packages or the exchanging of money; no reports of recent nearby crimes; no descriptions of recent crime suspects; no nearby potential or [actual] victims of crimes; no nearby vehicle matching a description of a vehicle involved in a recent crime, or the like.
[Id. at 169, 642 A.2d 401 (quoting lower court, 265 N.J.Super. 358, 360, 627 A.2d 174 (1993))].
The scenario in Tucker was expressly seen to be different from the situation in State v. Doss, 254 N.J.Super. 122, 603 A.2d 102 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992), where more suspicious circumstances had existed.
In State v. Ruiz, 286 N.J.Super. 155, 668 A.2d 460 (App.Div.1995), certif. denied, 143 N.J. 519, 673 A.2d 277 (1996) we observed:
We discern an underlying principle from the Supreme Court's analysis of the facts in Tucker as compared to those in Doss; the holdings it articulated; and the rationale expressed that the mere act of leaving a police presence, even by running away, cannot, alone, without any other factor, legitimately produce the articulable suspicion required to validate a Terry stop. It is that a person is privileged, upon noting a police presence, to decide that he or she wishes to have nothing to do with the police, without risking apprehension solely by reason of the conduct manifesting that choice. State v. Kuhn, 213 N.J.Super. 275, 282, 517 A.2d 162 (App.Div.1986). A departure alone signifies nothing more than behavior in fulfillment of a wish to be a somewhere else.

[Id. at 162-63, 668 A.2d 460.]
We add only, for the purposes of this case, that the mere act of putting something from one's hand into one's own pocket while departing alone signifies nothing additional by way of reasonable suspicion.
Clearly, the facts in this case leading up to the search of defendant's person are more closely akin to Tucker, where the police conduct which led to the discovery of the contraband at issue was evaluated as lacking sufficient basis, than they are to Doss, where an adequate basis was present, see id. at 163, 668 A.2d 460, and to other cases, including those relied upon by the trial judge, in all of which ample grounds existed for a stop valid under the rule of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968). See also, e.g., State in the Interest of C.B., 315 N.J.Super. 567, 719 A.2d 206 (App.Div.1998); State v. Sharpless, 314 N.J.Super. 440, 715 A.2d 333 (App.Div.1998). Such grounds were lacking here. Defendant did nothing remotely suspicious. At a daylight hour, he was "idle, not really walking around, just standing there." He then walked away on a publicly used path, looked back at the police, and put something from his hand into his pocket. None of defendant's actions betokened anything anti-social, let alone unlawful, and Officer Niesz offered not even a subjective justification for suspecting that defendant was up to no good:
Q. You didn't see [defendant] speaking to anyone prior to your stopping him, isn't that right?
A. That's correct.

*1275 Q. You didn't see him, you didn't see any conversation between him and any other individual prior to that, is that right?
A. That's correct.
Q. You didn't see any hand to hand transaction between him and any other individual, is that right?
A. Yes.
Q. All you saw was [defendant] standing or being in the area of the Day Activity Center and then begin to walk down toward the tracks, isn't that right?
A. That's correct, after he saw us in our vehicle.
Q. After he saw some individuals in an unmarked vehicle, and he just walked down the tracks on a sunny afternoon, isn't that right?
A. Correct.
Q. And in fact he didn't do anything that was against the law, isn't that right?
A. No, not until the point when we stopped him.
Q. He didn't do anything against the law even then, did he?
A. No.
Q. He wasn't any threat to you, was he?
A. No.
Q. He didn't say anything to you, did he?
A. No.
Q. Prior to your stopping?
A. Right.
Q. He did not, other than the fact at one point you made an observation that he placed something in his pocket, he didn't make any furtive movement, did he?
A. No.
Q. And basically what you saw at some point in time as you approached him, you testified that you saw him place something with his hand into his pocket?
A. That's correct.
Q. You didn't testify that it appeared to be drugs, did you?
A. No.
Q. Because he only has one hand, that is the way he has to place anything in his pocket, correct?
A. Yes.
Q. He could have been putting money in his pocket?
A. Could have.
Q. He could have been putting a piece of paper in his pocket?
A. He could have.
Q. Could have been reaching into his pocket to take something out for all we know?
A. Absolutely.
Thus, there was nothing in Officer Niesz's testimony which could reasonably be taken to be the articulated or articulable suspicion required to validate a Terry stop. Therefore, it is inconsequential whether the search of defendant's person was conducted with or without his permission. The police lacked adequate basis for stopping him at all, the essential preliminary step to the search. Defendant's apparently innocent conduct and demeanor cannot be transmuted into something more nefarious by a hindsight focus on the results of a search the police had no right to conduct.
Accordingly, the trial court's denial of defendant's motion to suppress is reversed and the conviction for third degree possession of cocaine is vacated. The matter is remanded for further proceedings on indictment no. 96-01-0033.