# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0900-24

STATE OF NEW JERSEY IN
THE INTEREST OF T.A.W.,
a juvenile.

_____

Argued January 22, 2026 – Decided April 10, 2026

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FJ-04-0390-24.

Rachel A. Neckes, Assistant Deputy Public Defender, argued the cause for appellant T.A.W. (Jennifer N. Sellitti, Public Defender, attorney; Rachel E. Leslie, Assistant Deputy Public Defender, of counsel and on the brief).

Jason Magid, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Grace C. MacAulay, Camden County Prosecutor, attorney; Jason Magid, of counsel and on the brief).

PER CURIAM

Following a guilty plea and adjudication of delinquency for conduct that, if committed by an adult, would constitute second-degree unlawful possession

of a weapon, N.J.S.A. 2C:39-5(b)(1), appellant T.A.W.[1] appeals from a June 27, 2024 Family Part order denying his motion to suppress evidence seized without a warrant. We affirm.

I.

On November 2, 2023,[2] Sergeant Anthony Berg, a ten-year veteran of the Camden County Police Department, was patrolling the Centerville section of Camden City. Berg was in police uniform in a marked patrol sport utility vehicle (SUV). At the time, he was the supervisor of a tactical unit whose members were "actively seeking the presence of firearms and narcotics as part of their daily tasks." Berg previously made "numerous" arrests involving firearms arising out of traffic stops in Centerville which, based on his work experience, had a "reputation" for "[n]arcotics, gun violence, [and] numerous homicides."

At approximately 9:00 p.m., Sergeant Berg observed a vehicle driving erratically "throughout the Centerville section of the city." The vehicle pulled over to the curb "real quick," then drove away without "coming to complete stops." No one exited the vehicle at the curb, and the vehicle accelerated and

---

[1] Because T.A.W. was a juvenile, we use initials to protect his privacy. R. 1:38-3(d)(5).

[2] Testimony during the hearing inadvertently referred to November 3, 2023.

A-0900-24

drove off when the occupants noticed the police SUV.  From Berg's experience, he was concerned the driver was "trying to get away from [his] view."  He also noticed "a large air freshener dangling from the rearview mirror," which obstructed the driver's view through the windshield.

Sergeant Berg decided to conduct a vehicle stop "[t]o see if there[ wa]s anything further.  Maybe they could be intoxicated.  Maybe . . . they could have committed a crime.  Attempting to commit a crime."  However, he was unable to catch up to the vehicle because it "continued making sudden and erratic turns."  He radioed other officers in the area, advising them of his observations, and another sergeant conducted the motor vehicle stop.

Upon approaching the stopped vehicle to assist, Sergeant Berg observed the driver, later identified as T.A.W., "sitting in the driver's seat, along with two individuals in the back, and a front seat passenger who . . . looked like she was manipulating items near . . . the floorboards, constantly moving around."  The front-seat passenger's movements concerned Berg because he could not see her hands, which "heighten[ed his] awareness."  He also noted the back-seat passengers were "shaking a little bit . . . like there was something . . . bothering them."

A-0900-24

Sergeant Berg noticed T.A.W. had a "black . . . cross-body bag . . . tucked away near his right side" next to the center console area. He was immediately concerned because, in his experience, "[cross-]body bags [we]re commonly used to store firearms" and "at one point it looked like [T.A.W. wa]s trying to . . . keep it away from [his] view." He requested identification from T.A.W., who explained he did not have a driver's license or other form of identification. The front-seat passenger, who owned the vehicle, told Berg she was unaware T.A.W. did not have a license.

Because T.A.W. did not have a license or identification and there were concerns for officer safety, Sergeant Berg began removing the occupants from the vehicle, starting with T.A.W. and the driver's side back-seat passenger. Berg testified "due to the heavy object" inside the cross-body bag, it "did not move when [T.A.W.] exited the vehicle" and was still accessible to the remaining passengers in the vehicle.

Pointing to screenshots of the BWC footage, Sergeant Berg explained why a fold in the bag caused him concern for officer safety:

> So the way I'm looking at this bag you can see at the bottom right-hand side of the bag there's some type of object in there, in the bottom.
>
> The way the fold is you could see that the top portion of that bag is just flimsy, very flimsy. If there

4

was nothing in that bag, it would just fall over. However, there's an item in the bottom filling that corner right there that's keeping it from falling over.

Sergeant Berg further testified he had seen that type of bag used to carry a firearm "[w]ell over thirty[ or] forty" times, including "just . . . the other day, same thing." Based on his training and experience, he "reasonably believed there was a firearm" inside the bag and, because of the front passenger's "close proximity," Sergeant Berg picked up the bag and moved it onto the driver's seat.

After the remaining two passengers exited the vehicle, Sergeant Berg conducted a frisk of the bag, which was documented on BWC video. He testified when he pressed on the bag, which was made of a "thinner leather" material, he "immediately" identified the object as a gun, based on his years of training and experience with firearms, including as a firearms instructor. Berg then placed the four individuals in handcuffs, returned to the driver's side of the vehicle, and opened the bag, revealing a firearm and twelve ball-point rounds.

Noting Sergeant Berg's testimony was "corroborated by video evidence," which documented his observations and actions during the stop, the motion judge found "his testimony . . . credible and truthful, and accept[ed his] testimony in its entirety." The judge found, based on the totality of the circumstances,

5

the State . . . demonstrated that officers had a particularized and objective basis for suspecting criminal activity, when the vehicle was observed in known locations for narcotics and firearms offenses, driving erratically, failing to stop, pulling over with no one . . . entering or exiting the vehicle, and then pulling away upon observing law enforcement, and then continuing to drive in a manner where law enforcement could not catch the vehicle, necessitating a call to other team members.

While each of these incidents on their own may have not warranted an investigatory stop, the totality of these circumstances forms an objective basis to conduct a stop, thus the investigatory stop was valid.

The judge held the frisk of the cross-body bag was justified under the protective frisk doctrine. She determined Sergeant Berg "could have reasonably believed that leaving the cross-body bag . . . in the vehicle would be dangerous" because, based on his training and experience, it likely contained a weapon. The judge reasoned:

The frisk was justified given Sergeant Berg's observations and his training and experience. There w[ere] still three occupants in the vehicle that had access to the cross-body bag. In particular, the passenger was in close proximity as evidenced by [a still screen shot] and the [BWC footage]. There was mov[ement] within [the] vehicle clearly giving rise to an objective belief that occupants were armed and dangerous.

6

Having concluded the stop of the vehicle and subsequent frisk of the bag were justified, the judge entered an order denying the motion to suppress.

On appeal, T.A.W. raises the following issues:

POINT I

THE POLICE LACKED REASONABLE AND ARTICULABLE SUSPICION TO INITIATE THE TRAFFIC STOP.

A.    Hanging an air freshener from a rearview mirror is not illegal, and the officer's testimony did not establish that he observed the specific air freshener in this case "unduly interfer[ing]" with T.[A.]W.'s view as required by N.J.S.A. 39:3-74.

B.    Driving a car as if to avoid a police encounter is not suggestive of criminal activity.

POINT II

THE PROTECTIVE SWEEP EXCEPTION TO THE WARRANT REQUIREMENT DID NOT ALLOW SERGEANT BERG TO SEARCH T.[A.]W.'S BAG.

A.    There was no objective, reasonable basis to believe that a weapon was inside the bag.

B.    [Sergeant] Berg frisked the bag after every passenger had been removed from the car and was detained, so there was no reasonable basis to believe the passengers were dangerous or could gain immediate access to the bag as required for the protective sweep exception.

A-0900-24

II.

We defer to a trial court's factual findings in a suppression hearing "when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). The trial judge has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999) (internal quotation marks omitted)). Appellate courts will ordinarily "not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014) (internal quotation marks omitted)). However, no deference is owed to the trial court's application of the law to the facts, which is reviewed de novo. State v. Fenimore, 261 N.J. 364, 373 (2025).

An investigative stop, also known as a Terry[3] stop-and-frisk, does not require probable cause to believe a person has committed or is about to commit an offense. State v. Nishina, 175 N.J. 502, 510-11 (2003). Rather, "[a] police officer may conduct an investigatory stop if, based on the totality of the

---

[3] Terry v. Ohio, 392 U.S. 1, 21 (1968).

A-0900-24

circumstances, the officer ha[s] a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002).

"Although reasonable suspicion is a less demanding standard than probable cause, '[n]either "inarticulate hunches" nor an arresting officer's subjective good faith can justify infringement of a citizen's constitutionally guaranteed rights.'" Goldsmith, 251 N.J. at 399 (alteration in original) (quoting Stovall, 170 N.J. at 372 (Coleman, J., concurring in part and dissenting in part)). Rather, reasonable suspicion must arise from the totality of the circumstances "in view of [the] officer's experience and knowledge, taken together with rational inferences drawn from th[e] facts." State v. Davis, 104 N.J. 490, 504 (1986).

In order to lawfully stop a vehicle based on a motor vehicle offense, an officer need only have "an articulable and reasonable suspicion that the driver has committed" the offense. Locurto, 157 N.J. at 470 (quoting State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997)). Proof beyond a reasonable doubt is not required; "the State need prove only that the police lawfully stopped the car." State v. Williamson, 138 N.J. 302, 304 (1994).

A-0900-24

The motion judge credited Sergeant Berg's testimony "the vehicle was observed in known locations for narcotics and firearms offenses," was driving erratically, appeared to evade him, and displayed an air freshener, which blocked the driver's view of the windshield. Thus, she found the totality of the circumstances "form[ed] an objective basis to conduct a stop."

Appellant argues Sergeant Berg's testimony was insufficient to establish grounds for the motor vehicle offense. N.J.S.A. 39:3-74, entitled "Windshields must be unobstructed and equipped with cleaners," prohibits driving a vehicle "equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides." Appellant points to State v. Barrow, 408 N.J. Super. 509, 523 (App. Div. 2009), in which we determined an officer must "provide articulable facts showing [the officer] reasonably believed that an object hanging from a rearview mirror obstructed the driver's view, thus violating the statute."

We are satisfied Sergeant Berg's testimony, along with the BWC footage, met this threshold. He described seeing "an object hanging from the rearview mirror that was obstructing the windshield." He explained "obstruction" as when "that item hanging is blocking something on the other side of that driver's view." And unlike Barrow, which is absent any discussion of documentary evidence, the motion judge here was also able to view the BWC footage and still

10

shots depicting the "large air freshener dangling from the rearview mirror," which corroborated Sergeant Berg's description.

Appellant also argues Sergeant Berg's testimony regarding the vehicle's maneuvers was insufficient to justify the traffic stop. Appellant cites a host of cases holding an individual's evasion or non-responsiveness to police alone cannot justify an investigatory stop.[4] However, these cases concern police encounters where the subject is on foot or riding a bicycle. We are unpersuaded this body of case law dictates the outcome here because there are heightened concerns with an individual driving a motor vehicle.

Sergeant Berg observed driving that was not only evasive, but also erratic, which posed an additional risk to the occupants of the vehicle and the public. See State v. Golotta, 178 N.J. 205, 218 (2003) (holding the risk posed by "an intoxicated or erratic driver" is a substantial factor "when evaluating the reasonableness of the stop"). He reasonably decided to stop the car, in part, to ensure the erratic driving was not caused by intoxication or other impairment, which could have endangered both the occupants and the public.

---

[4] Goldsmith, 251 N.J. 384; State v. Frankel, 179 N.J. 586 (2004); State v. L.F., 316 N.J. Super. 174 (App. Div. 1998); State v. Williams, 410 N.J. Super. 549 (App. Div. 2009); State v. Dangerfield, 171 N.J. 446 (2002).

A-0900-24

Appellant also challenges the motion judge's acceptance of Sergeant Berg's testimony the neighborhood was a "high-crime area." Under Goldsmith, 251 N.J. at 405, officers being in a high-crime area "can be one factor in determining whether reasonable suspicion existed. The State, however, must provide at least some evidence to support the assertion that a neighborhood should be considered as 'high crime.'" While Sergeant Berg's testimony on this issue was somewhat generalized, the motion judge's findings were nevertheless grounded in the record, and she did not place great weight on this factor. Accordingly, we discern no error in the judge's determination the totality of the circumstances justified the investigatory stop.

Appellant argues even if the stop was valid, the protective sweep exception to the warrant requirement did not justify the search of the bag. He contends there was no reasonable basis to believe a gun was inside the bag and, because Sergeant Berg did not frisk the bag until after all the occupants had exited the vehicle, there was no objective reason to believe the passengers could gain immediate access to the bag.

"An officer lawfully stopping a vehicle may conduct a protective frisk of the passenger compartment if [the officer] has a reasonable suspicion that the individual is dangerous and may gain immediate access to weapons." Gamble,

218 N.J. at 431-32. A protective sweep is permissible to "ferret out weapons that might be used against police officers," and therefore "must be cursory and limited in scope to the location where the danger may be concealed." State v. Robinson, 228 N.J. 529, 534 (2017) (quoting Gamble, 218 N.J. at 433).

A protective sweep is justified if "a reasonably prudent person would be warranted in the belief that his or her safety or that of others was in danger." State v. Lund, 119 N.J. 35, 45 (1990). "That determination is fact-sensitive and requires consideration of whether the totality of the circumstances provided the officer with an articulable and particularized suspicion that the individual was involved in criminal activity, within the context of the officer's relative experience and knowledge." Gamble, 218 N.J. at 432. An officer should have a "specific and objectively-credible reason to believe that the suspect is armed" but need not believe violent criminal activity is imminent. State v. Valentine, 134 N.J. 536, 545 (1994). A court should not second-guess an officer's reasoned suspicion with the benefit of hindsight. See State v. Chapman, 332 N.J. Super. 452, 462 (App. Div. 2000) ("[P]olice are often required to act on the spur of the moment without the benefit of quiet contemplation. Our approach is thus to 'avoid unrealistic second-guessing of police officers' decisions.'" (quoting

13

United States v. Alvarez, 68 F.3d 1242, 1244 (10th Cir. 1995) (internal quotation marks omitted))).

The testimony and BWC footage established:  Sergeant Berg observed a black cross-body bag which, in his experience, was commonly used to carry a firearm; T.A.W. attempted to hide the bag between his body and the center console of the vehicle; and the folded bag was weighted down and did not move when T.A.W. exited the vehicle.  After removing T.A.W. and the driver's side rear-seat passenger, Berg moved the bag away from the front-seat passenger to the driver's seat, and noted "it was heavily weighted down," which supported his belief it contained a firearm.

Although all the occupants had exited the vehicle when Sergeant Berg conducted the frisk of the bag, the risk to the officers still existed at that time. No one was in custody and, except for Berg's observations of the cross-body bag, nothing indicated they would not be permitted to return to the vehicle and be on their way.  We therefore conclude the protective frisk of the bag was justified for Sergeant Berg to confirm or dispel his reasonable, articulable suspicion the bag contained a firearm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0900-24