**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0025-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TARRANCE SAPP, a/k/a
TERRANCE SAPP and
TARRANCE B. SAPP,

    Defendant-Appellant.

_____

> Argued April 1, 2025 – Decided April 15, 2025
>
> Before Judges Gooden Brown and Chase.
>
> On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 22-07-0484.
>
> Rebecca S. Van Voorhees, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rebecca S. Van Voorhees, of counsel and on the brief).
>
> Kyle P. Inverso, Assistant Prosecutor, argued the cause for respondent (Janetta D. Marbrey, Mercer County Prosecutor, attorney; Kyle P. Inverso, on the brief).

PER CURIAM

Defendant Tarrance Sapp appeals from the August 17, 2023 judgment of conviction specifically challenging the denial of his motion to suppress a gun that police seized from his waistband in the course of a warrantless pat-down of his person after a motor vehicle stop. We affirm.

The record developed at the suppression hearing reflects the following facts. On May 12, 2002, at around 11:00 a.m., Trenton Police Detectives Aaron Camacho, Gianni Zappley, and Aaron Bernstein were on patrol in an area known for its high crime rate. They had a K-9 unit trailing them. Detective Camacho had been a Trenton officer for about five-and-a-half years and was assigned to the Violent Crimes Unit. Its purpose was to patrol the areas of the city which are subject to street crimes involving drug sales and gun violence.

The detectives were utilizing an unmarked patrol vehicle equipped with lights and sirens and dressed in plain clothes when they observed a gray Jeep Grand Cherokee with heavily tinted front windows circle the block a couple of times. The detectives followed the Jeep and observed a defective rear brake light. After observing these motor vehicle violations, the detectives activated their emergency lights and sirens and conducted a motor vehicle stop. Detective

2

Zappley approached the front-driver's side window, while Detective Camacho approached the front-passenger's side window.

Both detectives made contact with the driver, who was identified as defendant. Defendant appeared visibly nervous, and his hands were shaking frantically while he provided Detective Zappley with his credentials. Without being asked questions, defendant immediately started telling the officers why he was in the area and referenced that he was not lying at least three times. Additionally, Detective Camacho observed an open Heineken beer bottle located in the driver's side door pocket.

Defendant then reached in the back seat and held up an orange safety vest while explaining to officers that he was on his way to work. He then placed it over his waistband area. From Detective Camacho's training and experience, he knew that criminals commonly conceal weapons in their waistband, so the detective was immediately alerted by the fact that defendant chose to place the safety vest over his waist. Detective Camacho also observed defendant was partially hunched over in his seat with his arms and hands as if he was concealing an object in his waistband.

At this time, Detective Bernstein ordered defendant out of the vehicle and escorted him to the rear of the vehicle. When defendant was escorted to the rear

A-0025-23

of the vehicle, he held the safety vest in his right hand. As he was walking, defendant placed the vest in front of his waistband as if he was concealing something. Defendant was ordered to place his hands on top of the Jeep. As he did so, defendant tightened his abdomen area and thrust his waist against the trunk of the Jeep. The detectives pulled defendant's body away from the vehicle and immediately felt the handle of a handgun in his waistband. Detective Camacho pulled a Ruger P95 9mm handgun from defendant's waistband.

Shortly after defendant was placed under arrest, Detective Kullis and his K-9 partner, Caesar, conducted a "sniff" of the vehicle. After conducting the "sniff," Caesar indicated the presence of illegal narcotics on the driver's side of the vehicle. A search of the vehicle revealed approximately twenty-one grams of crack cocaine located in the driver's side door where detectives had previously seen the beer bottle.

Defendant was charged in an indictment with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); fourth-degree possession of prohibited weapons and devices, N.J.S.A. 2C:39-3(j); third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); second-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(2); third-degree possession of a CDS with intent to distribute on or near school

property, N.J.S.A. 2C:35-7(a); second-degree possession of a CDS with intent to distribute on or near a public facility, N.J.S.A. 2C:35-7.1(a), -5(a)(1), -5(b)(2); second-degree possession of a firearm while committing a CDS offense, N.J.S.A. 2C:39-4.1(a); second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b); and fourth-degree certain persons not to possess certain ammunition, N.J.S.A. 2C:39-7(a).

Defendant moved to suppress the CDS and the handgun seized from his person. He argued that, under the circumstances, the police did not have reasonable suspicion to stop his vehicle or search him.

The State presented testimony from Detective Camacho at the suppression hearing, in which he described the officers' actions at the scene and their reasons for conducting the pat-down. The State also played footage from the body-worn cameras of two of the officers. Defendant did not testify or present any witnesses. The trial court expressly found Detective Camacho credible.

After considering the evidence and the parties' legal arguments, the trial court issued a fifteen-page written decision denying defendant's motion. The court examined each phase of the incident, finding that police had acted appropriately in stopping the vehicle, removing defendant, patting him down, and searching the vehicle. The court specifically found that based on

"[d]efendant's conduct and use of the safety vest to obstruct officers' view of his waistband, . . . the officers had a reasonable and justifiable suspicion to conduct the pat[-]down of . . . [d]efendant."

Plea negotiations followed. Defendant entered a guilty plea to second-degree unlawful possession of a handgun. Consistent with the plea agreement, the court sentenced defendant to a five-year custodial term with forty-two months of parole ineligibility. The remaining counts of the indictment were dismissed. Defendant now appeals the suppression ruling, in accordance with Rule 3:5-7. He argues in his brief:

> THE COURT ERRED IN FAILING TO SUPPRESS
> THE EVIDENCE BECAUSE [DEFENDANT] WAS
> FRISKED ABSENT REASONABLE SUSPICION HE
> HAD A WEAPON.
>
> A. On the Body-Worn Camera Footage,
> [Defendant]Displays No Nervous Behavior
> or Furtive Gestures.
>
> B. Alternatively, [Defendant's] Supposed
> Furtive Gestures and Nervousness Did Not
> Establish Reasonable Suspicion to Frisk
> Him.
>
> C. The Motion Court Erred in Denying
> Suppression Based on [Defendant's]
> Conduct After He Exited the Car, Because
> it Was Equally Ambiguous Evidence of
> Nervousness.

6

The State argues these contentions lack merit, and that the officers' actions were justified by case law governing warrantless searches and seizures.

In reviewing the trial court's suppression decision, we are guided by well-settled principles. We ordinarily "defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record." State v. Gomez, ___ N.J. Super. ___, ___ (App. Div. 2025) (slip op. at 9) (quoting State v. Smart, 253 N.J. 156, 164 (2023)). This is true in suppression hearings. See State v. Dunbar, 229 N.J. 521, 538 (2017). Trial courts are owed deference because of their "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

However, "[a] trial court's legal conclusions . . . are reviewed de novo," and factual findings that are "clearly mistaken" must be reversed in the interest of justice. State v. Cohen, 254 N.J. 308, 319 (2023) (first quoting Ahmad, 246 N.J. at 609; and then quoting State v. Gamble, 218 N.J. 412, 425 (2014)). If the reviewing court finds that the officers acted unconstitutionally, the fruits of the search must be suppressed. State v. Patino, 83 N.J. 1, 14-15 (1980). Defendant concedes the traffic stop was proper. Turning to the next phase of events, defendant also concedes, and we agree with the trial court, the police were

7

justified in removing defendant from the vehicle, as he was the driver of the vehicle. See Pennsylvania v. Mimms, 434 U.S. 106, 109-11 (1977); State v. Smith, 134 N.J. 599, 610-11 (1994). Therefore, we turn our focus to the key phase of the encounter—the officer's pat-down of defendant's waist.

It is well established under the federal and New Jersey Constitutions that the police may stop and frisk a person if they have reasonable suspicion that evidence of criminal activity or a weapon may be found on that person. Terry v. Ohio, 392 U.S. 1, 26-27 (1968); State v. Carrillo, 469 N.J. Super. 318, 335 (App. Div. 2021); State v. Richards, 351 N.J. Super. 289, 299 (App. Div. 2002) (quoting Terry, 392 U.S. at 24). This standard of reasonable suspicion is less rigorous than probable cause. Terry, 392 U.S. at 26-27. In the course of a permissible Terry stop and frisk, the police are authorized to "conduct a carefully limited search of the outer clothing" of the person. Id. at 30; State v. Thomas, 110 N.J. 673, 678 (1988); State v. Nishina, 175 N.J. 502, 514- 15 (2003) (stating that "[u]nder Terry, an officer is permitted to pat down a citizen's outer clothing when the officer 'has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime'" (citation reformatted) (quoting Terry, 392 U.S. at 27)).

A-0025-23

"To establish reasonable suspicion, 'the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the suspicion." State v. Pitcher, 379 N.J. Super. 308, 315 (App. Div. 2005) (quoting State v. Pineiro, 181 N.J. 13, 21 (2004)). "[A] court must consider 'the totality of the circumstances—the whole picture'" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019) (quoting State v. Stovall, 170 N.J. 346, 361 (2002)).

When reviewing whether the State has shown a valid protective frisk, consideration of the totality of the circumstances requires a reviewing court "'give weight to "the officer's knowledge and experience" as well as "rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise."'" State v. Bard, 445 N.J. Super. 145, 156 (App. Div. 2016) (quoting State v. Citarella, 154 N.J. 272, 279 (1998)). "'The fact that purely innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions as long as "a reasonable person would find the actions are consistent with guilt."'" Id. at 156-57 (quoting Citarella, 154 N.J. at 279-80). To be clear, "[e]ven if all of the factors were susceptible of purely innocent explanations, a group of innocent circumstances in the aggregate can support a finding of

reasonable suspicion." State v. Dunbar, 434 N.J. Super. 522, 527 (App. Div. 2014) (quoting Stovall, 170 N.J. at 368); see also State v. Birkenmeier, 185 N.J. 552, 562 (2006) ("Facts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate . . . ." (quoting Nishina, 175 N.J. at 511)). Moreover, "the same conduct that justifies an investigatory stop may also present the officer with a specific and particularized reason to believe that the suspect is armed." State v. Privott, 203 N.J. 16, 30 (2010).

Factors that support an articulable and reasonable suspicion a suspect is armed and dangerous include: a stop occurring in a high-crime area, see id. at 26; see also State v. Valentine, 134 N.J. 536, 547 (1994) (explaining "the location of the investigatory stop can reasonably elevate a police officer's suspicion that a suspect is armed"); the knowledge and experience of police officers, see ibid. ("Terry itself acknowledges that police officers must be permitted to use their knowledge and experience in deciding whether to frisk a suspect."); see also Bard, 445 N.J. Super. at 156-57; and a suspect's movements toward a waistband, pocket, or other area of the body where the suspect is likely to conceal a weapon, see Privott, 203 N.J. at 29; State v. Bellamy, 260 N.J. Super. 449, 457 (App. Div. 1992).

Defendant's attempt to isolate each circumstance presented to the officers is unavailing and ignores the totality of the circumstances that the detectives faced. The trial court accepted Detective Camacho's testimony that defendant was stopped in a high crime area; was acting nervously from the beginning of the traffic stop; repeated the same answers over and over; constantly referred to how he is not "lying"; appeared hunched over in his seat; covered his waist area with the orange safety vest; was given orders to exit the vehicle and proceed to the trunk of the car but continued to use the safety vest to shield his waist from the officer's view; and, upon arriving at the back of the Jeep, "pushed his waistband area into the back of the trunk and thrusted [sic] his waist firmly against the trunk."

The trial court made its findings after watching Detective Camacho and listening to his testimony, then reviewing the body-worn camera footage from the incident. Thus, these facts are supported by "sufficient credible evidence in the record." State v. Nyema, 249 N.J. 509, 526 (2022) (quoting Ahmad, 246 N.J. at 609). While defendant clearly interprets the body-worn camera footage differently, defendant has not established that the trial court's factual findings are "'so clearly mistaken "that the interests of justice demand intervention and

correction."'" <u>Gamble</u>, 218 N.J. at 425 (quoting <u>Elders</u>, 192 N.J. at 244). Thus, they are entitled to deference by this court. <u>See</u> <u>Nyema</u>, 249 N.J. at 526.

We concur with the State that the officer had reasonable suspicion to perform a pat-down frisk of defendant's waist under the <u>Terry</u> doctrine. The totality of circumstances supported reasonable suspicion for the pat-down. The pat-down was directed appropriately at defendant's waistband. We therefore affirm the court's denial of defendant's motion to suppress the seized handgun.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-0025-23